Kostancija Szurkus, Appellee, v. Joseph Szurkus et al., Defendants.
Appeal of Walter Dombrowski, Appellant.

Gen. No. 41,866.

Heard in the third division of

this court for the first district at the October term, 1941. ▮▮▮▮▮ ▮▮▮▮▮ Opinion filed January 7, 1942.

ALBIN A. PETER, of Chicago, for appellant.

MORRIS ALEXANDER, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On June 5, 1940, Kostancija Szurkus filed her complaint in the superior court of Cook county against her former husband (Joseph Szurkus) and others. She sought to partition the real estate commonly known as 4454-56 South Western avenue, Chicago. On November 29, 1940, the court entered a decree finding plaintiff to be the owner of an undivided one-half interest and her former husband to be the owner of the other undivided one-half interest; that defendant Harry M. Nacey was the owner and holder of unpaid principal and interest notes in the sum of $10,246.37, secured by a trust deed found to be a first and prior lien on the premises; that Martha Yasas, defendant, was a judgment lien holder against the one-half interest of Joseph Szurkus in the sum of $2,649.17; and that John F. Eudikis, defendant, was a judgment lien holder against the one-half interest of Joseph Szurkus for $301.88. The decree further found that on October 11, 1939, the circuit court of Cook county severed the bonds of matrimony between plaintiff and Joseph Szurkus. The realty is improved with a two-story brick building containing two stores, two offices, four apartments and a garage. The income is being collected by the Chicago Realty Management Corporation, as agent of the owner of the mortgage by virtue of an assignment of rents from plaintiff and Joseph Szurkus. The commissioners appointed to partition reported that the parcel was not susceptible of division without manifest prejudice to the parties, and

fixed the value at $17,500. On February 6, 1941, a decree was entered directing that the property be sold by a master in chancery for not less than two thirds of the valuation placed thereon by the commissioners. The master was directed to report to the court and to bring the money realized from the sale into court. The master's report of sale filed on March 7, 1941, shows that Walter Dombrowski bid $11,900, that being the highest and best bid and equal to at least two thirds of the valuation determined by the commissioners. The report stated that upon approval the master would execute and deliver to Walter Dombrowski a deed in accordance with the law and the decree. The then attorney of record for plaintiff, Anthony A. Slakis, served notice on all the attorneys of record for defendants that on March 7, 1941, he would appear before the chancellor and ask that the report of sale be approved. On March 7, 1941, another attorney, Morris Alexander, appeared for plaintiff and filed a verified petition in her behalf. Apparently, because the matter of the approval of the report of sale was set for hearing that morning, no notice of plaintiff's petition was served on any of the parties. Walter Dombrowski, the high bidder at the sale, did not have notice of the presentation of plaintiff's petition. Mrs. Szurkus' petition recited that the attorney she employed in the Fall of 1939 advised her that:

"The problems involving the joint ownership of said property could not be disposed of in said divorce proceedings and that further legal proceedings would have to be filed; that said attorney made no bona fide effort in said divorce proceedings to obtain personal service on said defendant and thereby made it impossible for plaintiff to obtain support money from defendant in said divorce proceedings; that thereafter said attorney informed petitioner that it was necessary to file what petitioner believed to be a 'politician suit.' Said attorney explained to petitioner that said pro-

ceedings would result in plaintiff obtaining complete title to said property involved in these proceedings, and would 'foreclose' the interest of defendant, Joseph Szurkus, in said proceedings, and that thereafter plaintiff would own said property, subject only to the existing first mortgage; that petitioner, who is of Lithuanian extraction, can neither read nor write the English language, except to sign her name, relied upon the representations of said attorney in permitting these proceedings to be filed on June 5th, 1940; that prior thereto, and while the divorce proceedings were pending in the Circuit Court of Cook County, said attorney obtained from petitioner a mortgage note and trust deed secured by the property which is the subject matter of these proceedings, which said mortgage note was in the sum of $2,000; that said documents were executed by petitioner upon instruction of said attorney, but that petitioner did not know at that time, nor did she subsequently learn, until the last few days, what the significance of said documents was; that thereafter, on June 6th, 1940, petitioner executed another mortgage note and trust deed, said mortgage note being in the principal sum of $1,000, secured by the property involved in these proceedings, at the direction of said attorney; that said attorney gave to petitioner a receipt for said $1,000 mortgage, written in English, the significance of which petitioner, at that time, did not understand; that said receipt recites that the consideration of said mortgage is the release of the previous mortgage of $2,000, and that the $1,000 mortgage was given as security for the attorney's fees of said attorney in these partition proceedings; that although said mortgage was of record as a lien on the property involved herein at the time that testimony was offered before the Master herein concerning the liens on said property, no mention whatsoever was made of said mortgage, and no reference was made thereto in the Master's Report or in the Decree of

Partition entered herein; that during all the months between June, 1940, and the present time, petitioner on numerous occasions requested from said attorney information with regard to the 'politician suit' and on all of said occasions, said attorney did advise petitioner that she would soon have said property back; that at no time did said attorney advise petitioner that there would be a sale of said property, nor did said attorney ever advise petitioner as to the true nature of partition proceedings; that on March 3rd, 1941, upon inquiry being made by petitioner from said attorney as to the development of her case, said attorney advised petitioner that there would soon be a sale of said property and that the result of said sale would be that Joseph Szurkus, defendant, would lose all interest that he might have in said property, and that petitioner would obtain complete title to said property; that said attorney also advised petitioner that she should not mention anything about said sale to anyone at all for at least a period of ten days, and that she should not even inform any members of her family as to what said attorney had told her; that because of the evasive and conflicting answers to her inquiries that had been given to petitioner by her attorney for a long period of time, petitioner caused an investigation to be made of said proceedings and consulted other counsel with regard thereto; that as a result of said investigation and consultation, petitioner learned for the first time the true nature of said 'politician proceedings' and petitioner learned that a Master's sale of said property had taken place, pursuant to a Decree of Partition, and a Decree of Sale entered herein, and that said property had been sold to one Walter Dombrowski on March 3rd, 1941, for the sum of $11,900. Petitioner also learned for the first time that there were liens against said property created by Joseph Szurkus, which liens had been proved in these partition proceedings, and that the

proceeds of said sale would be used to satisfy the first mortgage, court costs, judgment liens, and the second mortgage held by said attorney, Anthony A. Slakis, and that the proceeds of said sale would be insufficient even to satisfy said prior liens, so that in no event could there be any sums left from the proceeds of said sale for petitioner. Petitioner is informed and believes, and on such information and belief, states the fact to be that said purchaser is acting as a nominee for the owner of the first mortgage, and for one Edward Dombrowski, a tenant in said property, and for defendant, Joseph Szurkus, all with the knowledge and consent of said attorney, Anthony A. Slakis; that the whole purpose of these proceedings and of said sale was and is to dispose of the interest that petitioner may have in said property, so that defendant, Joseph Szurkus, Edward Dombrowski and said attorney, Anthony A. Slakis, may obtain said property for their own benefit. Petitioner is informed and believes, and on such information and belief, states the fact to be that an arrangement has been made with the owner of said first mortgage so that said mortgage will be extended for the benefit of the new owner of said property and for the benefit of Joseph Szurkus, defendant, to the exclusion of petitioner; that the attorney who has appeared herein as attorney for defendant, Joseph Szurkus, is an associate of the law firm which has appeared herein as attorneys for the owner of the first mortgage; that if petitioner had known the true significance and nature of these proceedings, she would not have permitted said attorney to file same and permit the said property to be sold at a forced sale; that said property is worth in excess of $20,000, and that there was and is a substantial equity in said property which could have been realized by negotiation and private sale. Petitioner alleges that the processes of this Court have been used to perpetrate a fraud upon plaintiff and upon this Court, and that if said sale heretofore conducted by the Master in Chancery herein, is

approved, petitioner will have been deprived of her interest in said property unfairly and without equity. Wherefore, petitioner prays that an order be entered herein disapproving said sale to Walter Dombrowski for $11,900, and that such other and further orders be entered herein, which upon full investigation by this Court of the circumstances surrounding these proceedings, shall be equitable in the premises.'' On March 7, 1941, the court granted plaintiff leave to file her petition, directed that all parties of record have 10 days in which to answer, that the petition and answers would be heard by the court on March 21, 1941, and decreed that the report of sale be disapproved. On March 17, 1941, Joseph Szurkus filed his answer to the petition and also filed a cross petition. The answer denied the allegations of the petition. His cross petition stated that prior to marrying plaintiff, he was married to Veronica Szurkus, who died on July 30, 1933; that he married plaintiff on October 20, 1934; that plaintiff is the mother of two grown sons; that plaintiff and defendant separated on June 13, 1938; that no children were born to them; that prior to the marriage of plaintiff and defendant she owned a bungalow located at 5543 South Nagle avenue, Chicago; that he was then the owner of the property here involved; that on or about January 12, 1935, she induced him to execute a deed whereby she acquired a one-half interest in such property; that the inducement was her promise to give him the sum of $4,000, to be raised from a $2,000 mortgage to be placed against her bungalow, plus $2,000 in cash which he claimed she possessed; that he made the conveyance in reliance on her promise, and that she failed to carry out her promise. He prayed that the court order a new sale of the premises; that she be decreed to pay him the moneys due him, and that no part of the proceeds of any sale be paid to her until she accounts for the moneys owing to him. On March 17, 1941, attorney Anthony A. Slakis filed his petition specifically denying the ma-

terial allegations of plaintiff's petition. It will be observed that up to this time none of the parties was averse to the disapproval of the sale. However, on March 21, 1941, which was the day previously set for the hearing on the petition of plaintiff, Walter Dombrowski filed a petition setting up that on March 7, 1941, he was informed that an order was entered disapproving the sale and that the hearing on the motion to enter such order was had without any notice to him and without his knowledge. He prayed that the order disapproving the sale, be vacated, and that he be given leave to answer the petition. On March 21, 1941, the chancellor granted Walter Dombrowski leave to file an answer to plaintiff's petition. On March 26, 1941, Dombrowski filed a motion to strike plaintiff's petition on the ground that it was insufficient in law. At the same time he filed an answer. On April 10, 1941, Dombrowski filed his amended answer to plaintiff's petition and stated that he was the highest bidder at the sale and that he delivered to the master a cashier's check in the sum of $1,200 as a deposit in compliance with the decree of sale; that the bid, in the sum of $11,900, was more than two thirds of the appraised value; that the property was sold to him subject only to the general real estate taxes for the year 1940, amounting to approximately $550, and the taxes for 1941; that the fair cash market value of the premises on March 3, 1941, was $12,500; that considerable repairs to the building would have to be made; that all exterior woodwork would have to be painted; that the rear porches needed considerable carpentry work; that all the garage doors would have to be replaced; that the interior would have to be decorated; that the expense of renovating the premises would amount to approximately $1,000; that the property was about 35 years old, located on a commercial and manufacturing street; that there is a lack of concentration of business in the neighborhood and an absence of national chain stores; that it is not in a shopping district; that the

rentals are low and not likely to increase; and that the price bid was fair. He denied any collusion with any other parties, and asked that the order disapproving the sale be vacated and that the master's report of sale be approved. Dombrowski introduced Ernest Geissler, who testified that he was in the real estate business; that he was an experienced appraiser; that he inspected the building; that he was acquainted with the neighborhood; that in his opinion the fair reasonable cash market value was $15,500; that the building was located in a manufacturing district; that it was about 20 years old, in fair condition; that is was badly in need of repairs and that the renovation would cost about $2,000. At the time this witness testified, an attorney, Mitchell Kilanowski, who was not of record as representing anyone, stated to the chancellor that he represented a client who would make a guaranteed bid of $13,000, and that he then had $1,500 as evidence that he could make the bid. On April 10, 1941, the chancellor denied Dombrowski's motion to strike plaintiff's petition, and his petition to vacate the order disapproving the sale and directed the master to return the deposit of $1,200 made as earnest money on the bid. Dombrowski appeals and asks that the order of April 10, 1941, be reversed and that the cause be remanded with directions to vacate the order of March 7, 1941, disapproving the master's sale, and to enter an order approving the sale. The issues made between Kostancija Szurkus, plaintiff, and Joseph Szurkus, defendant, on plaintiff's petition and defendant's answer and cross-petition, remain pending and undetermined.

In the case of *Anderson v. Weiss*, 308 Ill. App. 541, we discussed the law applicable to the facts of this case. We quoted from the case of *Shultz v. Milburn*, 366 Ill. 400, where the court said (403):

"A sale by a master in chancery is not, until confirmed by the court, a sale in a legal sense. The chancellor has a broad discretion in its approval or

disapproval. The highest bidder . . . acquires no interest in . . . the land and his bid is a mere offer to purchase. Confirmation is final consent, and the court being in fact the vendor, may consent or not, in its sound judicial discretion. This discretion, unless abused, will not be interfered with by a court of review. . . . However, the discretion thus vested in the court is not a mere arbitrary discretion but must be exercised in accordance with established principles of law." In *Levy v. Broadway-Carmen Building Corp.*, 366 Ill. 279, the court said (292) :

"The proof did not sustain a greater value than $50,000 at the time of the sale, but if it be assumed that this was somewhat inadequate, the fact that there was a depressed market for real estate would not be a sufficient circumstance, coupled with the supposed inadequacy in the bid, to warrant the chancellor in disapproving the master's report of sale. The power to disapprove a sale for gross inadequacy of bid exists independent of an economic depression. The chancellor abused his discretion and erred in refusing to approve the sale at $50,000."

The latest pronouncement on this subject by our Supreme Court appears in *Ryerson v. Apland*, 378 Ill. 472, decided at the November 1941 term, where the court held that on a master's sale in partition, the chancellor has a broad discretion to accept or reject the bid, and that the sale is not valid until and unless confirmed by the court.

The proposition for us to decide is whether the chancellor abused his discretion. We agree with the assertion of Dombrowski that the sale was conducted in accordance with the decree and that so far as the parties have proceeded, there is no evidence of fraud. Dombrowski relies on the case of *Ellguth v. Ellguth*, 250 Ill. 214, as authority for the proposition that plaintiff in her petition to disapprove the sale, cannot complain as to matters preceding the decree of sale. We

have studied the *Ellguth* case and are of the opinion that it is not applicable to the factual situation before us. In the case at bar the chancellor had a broad discretion which will not be disturbed unless he exercised that discretion in an arbitrary manner. The presumption is that the order disapproving the sale was in accordance with sound equitable principles. The bid of $11,900 was $233.34 more than the two-thirds minimum sale price authorized by the decree. The court had the right to consider that the sale for this price, if approved, would leave nothing for Joseph Szurkus and very little, if anything, for the plaintiff. The court also had the right to take into consideration the fact that plaintiff and defendant desired to have the sale disapproved. The only right which Dombrowski could assert was that the court exercise a reasonable discretion in deciding whether or not the sale should be approved. At the hearing before the chancellor, Attorney Kilanowski who was not employed by any of the parties, announced that he was authorized to guarantee a bid of $13,000, should another sale be ordered. We agree with Dombrowski that the better practice would be to require the proposed new bidder to make a deposit as evidence of his good faith. This was not done. Nevertheless, in passing on the motion to disapprove the sale the chancellor had the right to give consideration to the statement of Mr. Kilanowski. Dombrowski complains of the action of the chancellor in disapproving the sale without notice to him. We agree that the better practice would be to give notice to the purchaser at the sale. Under the facts of this case, it is not necessary for us to say whether or not a sale, disapproved without notice to the high bidder, should be set aside. To ignore the high bidder would discourage persons from bidding at judicial sales. The law encourages persons to bid. Apparently, the failure to notify the purchaser was occasioned by the fact that the parties were thinking of the controversy be-

tween plaintiff and Joseph Szurkus and overlooked the purchaser. He did come into court within 30 days from the time of the entry of the order disapproving the sale, and was permitted to file a petition, a motion to strike plaintiff's petition, an answer and an amended answer. He was given a full hearing and was permitted to introduce testimony in support of his contentions. From all of this, it is manifest that he had his day in court. It should also be borne in mind that the controversy between Kostancija Szurkus and Joseph Szurkus remains undetermined.

From a consideration of the record and the briefs, we are of the opinion that in disapproving the sale the chancellor did not abuse his discretion. Therefore, the order of the superior court of Cook county is affirmed.

*Order affirmed.*

HEBEL and KILEY, JJ., concur.