WILLIAM SLACK

*v.*

WILLIAM FENIMORE COOPER *et al.*

*Opinion filed December 20, 1905.*

1. JUDICIAL SALES—*chancellor has a broad discretion in matter of approving foreclosure sale.* The chancellor has a broad discretion in passing upon the acts of the master and approving or disapproving his acts with reference to sales under decrees, and such discretion, unless abused, will not be interfered with by a court of review.

2. SAME—*when refusal to approve foreclosure sale is proper.* Where a sale under a foreclosure decree is made by the master to

the solicitor for the owner of the equity of redemption under the misapprehension that he was acting for complainant, there being no other persons present, but, a few minutes thereafter, accepts a greatly increased bid from complainant's representative, who in the meantime had arrived, the chancellor may refuse to approve either sale and order a re-sale to be had.

3. SAME—*right of master to make a re-sale.* Where the master, on foreclosure sale, accepts a bid for the premises under the misapprehension that the bidder represents the complainant and for that reason requires no payment of the purchase money or a deposit, he has a right, upon learning of his mistake and notifying the bidder of the facts and of his intention to re-sell the property, to again offer it for sale.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. E. O. BROWN, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming a decretal order of the circuit court of Cook county entered in said cause on the 13th day of April, 1904, setting aside a sale of the premises involved in this cause to the German Old People's Home, one of the appellees, and refusing to confirm an alleged sale thereof to the appellant, and the order of a re-sale of said premises.

The facts of the case disclose that on June 5, 1902, the German Old People's Home, a corporation organized under the laws of the State of Illinois for charitable purposes, and John W. Buehler, as trustee, filed their bill of complaint in the circuit court of Cook county against August Warnhoff and others to foreclose a trust deed in the nature of a mortgage upon certain property in Cook county. The German Old People's Home was the owner of the indebtedness secured by said trust deed. John C. Wilson was one of the parties defendant to the bill, being the owner of the equity of redemption, and was represented in the foreclosure proceedings by William Slack, appellant, who filed an answer on behalf of said Wilson, the other defendants being defaulted.

A reference was had on the bill and answer and replication to William Fenimore Cooper, one of the masters in chancery of said circuit court, and on March 10, 1904, a decree of foreclosure and sale was entered in said cause, finding due the German Old People's Home from the defendant the sum of $8197.11, together with all costs incurred in the suit, and $409.85 attorneys' fees, and decreeing that the premises be sold at public auction for cash to satisfy the same provided the·defendants did not pay the sum found due in three days from the date of the decree, and providing for execution in case of a deficiency after sale. The master duly advertised the said premises for sale according to law and the terms of said decree. The time and place fixed for the same was one o'clock in the afternoon of April 5, 1904, at the judicial salesrooms of the Chicago Real Estate Board in Chicago. Between one o'clock sharp and five minutes after one upon said day at said·place, the master, acting under apparent misapprehension that the owner of the decree was represented at said sale by appellant and that all persons interested were present, offered the premises for sale, the master, from his statements, having been confused as to the attorneys that represented the parties interested. At the time said master offered the premises for sale there was no one present at the salesroom except Wilson and his solicitor, appellant. The master, immediately after one o'clock, offered said property for sale and the appellant bid $3000, and no other bid being received the master declared the same sold, and believing appellant to be the representative of said complainant, remarked, "That will leave you a deficiency of about $5800." Immediately upon such announcement of the master the appellant left the salesroom without depositing or offering to deposit any cash or making any arrangements for the payment of the same. The master being under the impression that Slack represented the complainant said nothing to him about the payment of cash, it being the custom and practice of masters in chancery in Cook county when property is bid

in at a sale in a foreclosure suit by the complainant, (if such bid is not in excess of the amount due under the decree,) to credit the amount of his bid upon the amount found due him in the decree, and when the property is bid in by one other than the complainant and the decree provides a sale for cash, either to require the amount of the bid to be paid in cash as the property is struck off, or a substantial deposit made.

As appellant and Wilson were leaving the salesroom, and just as they had stepped out from the door, they were met by Henry Horner, Jr., who was the solicitor for the complainant in the foreclosure proceedings, who being unaware of what occurred in the salesroom, asked appellant and Wilson to return to said salesroom, as he, Horner, was going to bid in said property on behalf of the complainant. Appellant and Wilson refused to return. When Horner entered the salesroom the master was still on the raised platform from which the property was offered for sale, making a notation regarding the sale. Horner immediately asked the master if he was ready to offer for sale the premises, and the master thereupon informed Horner that his (Horner's) representative had just been in and bid $3000 at said sale. Horner replied that no one had represented him and asked the master who made the bid, and was then informed that the property was bid in in the name of William Slack for $3000. Horner then informed the master that appellant was the defendant's solicitor. The master then said to Horner that, acting under the impression that the appellant represented the complainant, he had not demanded any cash and none had been paid, and that the purported sale had been made under a misapprehension and mistake by himself as to the status of the bidder. The master being informed by Horner that appellant and Wilson had just left the salesroom, asked Horner to go out and ask them to return, which he did, and on meeting them at appellant's office, which was only a short distance, informed appellant that the master had instructed him to say that the sale would not be made for the

sum of $3000 offered, on account of the misapprehension and because no cash had been paid, and informed them that the master would immediately proceed to receive higher and better bids for said property, and asked appellant to return to the salesroom at once, as the proceedings were to be re-opened. Appellant and Wilson refused to return to the sales-room, and Horner informed them there that he would return and bid the sum of $7000 on behalf of complainant, and immediately returned to the salesroom, arriving there in about fifteen minutes after one o'clock, and advised the master of the conversation between himself, the appellant and Wilson. The master then announced publicly that no cash having been deposited and said purported sale having been opened and conducted under the misapprehension of the master, as aforesaid, and because of his haste in making the said alleged sale, the same would be re-opened for higher and better bids, and called for other bids upon the property. Horner, on behalf of complainant, offered the sum of $7000, and being the highest and best bid received at that time, the premises were struck off to the complainant in said bill, the German Old People's Home, for said sum. Horner's reason, as stated by him, for not being present when the property was first offered for sale was that the watch he carried showed the time to be three minutes of one o'clock when he reached the salesroom, the clock at said salesroom register-ing but a few minutes after one.

The master filed his report showing the facts and report-ing the sale to the complainant, and in his report made a complete statement to the chancellor as to what transpired between all the parties at the sale. Appellant filed an inter-vening petition, praying that the sale of the premises to com-plainant be disaffirmed and that the sale of the premises to himself be approved and confirmed. On the same day the master filed an answer to said petition, and the complainant in said cause also filed its answer to the intervening petition. Exceptions were filed by appellant to the master's report of

sale, and upon a hearing on April 13, 1904, upon said peti-
tion and the sworn answers thereto, the exceptions of said
Slack to said master's report and the affidavits, the court
found, in substance, that because of the misapprehension,
mistake and error involved in said sale, all parties interested
and prospective bidders did not have an equal and sufficient
opportunity to bid, and also because no cash was paid or de-
posited upon said bid of appellant the bid of said appellant
should not be accepted or considered, and that if said sale
had been held in such a manner as to give all intending bid-
ders an opportunity to bid, the premises would have brought
at least $7000. It was therefore ordered by the chancellor
that both the bid of the complainant in said cause, as well as
that of the appellant, be rejected and a re-sale had. An or-
der was entered dismissing the petition of Slack for want
of equity, from which order a writ of error was sued out in
the Appellate Court, and this is an appeal from the judgment
of the Appellate Court affirming the decretal order of the
circuit court.

CHARLES K. LADD, for appellant.

HENRY HORNER, Jr., and CHARLES GOODMAN, for ap-
pellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

As will be seen from the above statement of facts, the
sole question presented in this case was the right of the chan-
cellor to set aside the sale made by the master and order an-
other sale, or whether or not the appellant was entitled to
the property under his bid. In our opinion the chancellor
had the right to order the re-sale of the premises, or even to
have accepted the sale as made by the master and reported
to the court for the $7000. The chancellor, in such pro-
ceedings, is charged with responsibility for the decrees and
orders to be made in the case, and it is his duty to make

investigations, and determine as to whether or not the sale as made by the master is regular, free from fraud or wrong and to the best interest of all parties concerned. The master is a ministerial officer for the purpose of carrying into effect the decree of the court, and his acts are binding only when approved by the court. If the chancellor finds, upon the coming in of the report of a master, that the sale as made is not to the best interest of all concerned and is inequitable, or that any fraud or misconduct has been practiced upon the master or the court or any irregularities in the proceedings, it is his duty to set aside the sale as made and order another sale of the premises. The chancellor has a broad discretion in passing upon the acts of the master and approving or disapproving his acts in reference to sales and entering its own decrees, (*Quigley* v. *Breckenridge,* 180 Ill. 627,) and his decree will not be disturbed by this court unless it is shown that he has abused his discretion and entered such an order or decree as would not seem equitable between the parties interested. Surely it cannot be said that the court has abused his discretion, in his actions in this case, in refusing to allow appellant to take the property in dispute, which is shown to have been sold under a misapprehension of fact and to be worth at least $8000, for the sum of $3000, when within fifteen minutes the master was offered $7000, or $4000 more than the first bid. If appellant had wanted to act fairly in reference to the sale he should have returned to the place of sale when sent for by the master and defended his actions.

No money was paid by appellant as provided for by the decree, and we think, under the conditions as here shown to exist, the master was justified in offering the premises for sale again. While it is true that mere inadequacy of price will not always justify the setting aside of a sale, yet where there is such a misunderstanding and inadequacy of price as is shown to exist in this case, certainly it could not be said that the sale made to appellant was just and equitable

as between all the parties interested. The master in his statement says that if he had not been mistaken as to the identity of appellant he would undoubtedly have compelled him to comply with the terms of the decree as to payments. As soon as he learned the identity of the purchaser and learned that he was not acting for or representing the complainant, he at once notified appellant that because of the mistake as to the person and appellant's failure to pay the purchase money or make a deposit he would re-sell the property. This was within his power. In *Dills* v. *Jasper,* 33 Ill. 262, in discussing a case much like the one at bar, it is said (p. 273): "In this country the master usually requires the amount of the bid to be deposited with him at the time of its acceptance or immediately thereafter, and on failure to do so the master may reject the bid and may again expose the property for sale." The record further shows that the only person against whom the deficiency decree could operate is financially irresponsible, and that the debt could only be realized, if at all, by the sale of the property.

While under some conditions the misapprehension of the master as to the bidder may not make such a difference as would warrant a chancellor in setting aside the sale, yet under the conditions as we find in this record, the property being sold to the attorney for the party owning the equity of redemption when he in fact thought he was selling to the party complainant in the decree, who had no other remedy for obtaining his money except under the sale, and only realizing $3000 out of $8000 worth of property on over $8000 of indebtedness, the irregularities as shown warranted the chancellor in setting aside the sale, and there was no abuse of the discretion of the court.

The judgment of the Appellate Court will accordingly be affirmed.                    *Judgment affirmed.*