(No. 26082.—

OLIVER RYERSON *et al.* Appellants, *vs.* MABEL APLAND *et al.* —(ELIZABETH SWAGER *et al.* Appellees.)

*Opinion filed Nov. 24, 1941—Rehearing denied January 14, 1942.*

GUNN, J., specially concurring.
STONE and SHAW, JJ., dissenting.

ADSIT, THOMPSON & HERR, for appellants.

BAKER, NIVEN & CRABTREE, (STEVENS R. BAKER, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The master in chancery of Livingston county sold at a partition sale 372 acres of farm land and some city property which belonged to the heirs of Thomas Ryerson, deceased. The sale was held in accordance with the decree therefor and all statutory requirements were observed. No objection was raised as to city property and the sale of it was confirmed. The confirmation of the sale of the farm lands, however, was objected to and, on hearing, disapproved. The highest bidders at that sale have appealed from the decree of the circuit court which disapproved the sale of the farm lands and ordered a resale.

These bidders are tenants in common with the other parties to the suit, and the sale was made to them collectively. Theirs was the only bid. The farm lands were appraised at $29,160, or $78.38 per acre. They were sold to appellants for $19,500, or an average of $52.45 per acre. This was $60 more than the two-thirds of the appraised value required by statute. (Ill. Rev. Stat. 1939, chap. 106, par. 27.) On the hearing of objections to the master's report of sale Gilman Carlson, a party to the proceeding, offered as a bid on resale $24,180 for the 372 acres, or $65 per acre, an advance of slightly over twenty-four per cent. This bid was guaranteed by his father, John Carlson.

At the hearing on the objections, John Carlson testified a rumor was circulated at the sale that the appellants were going to run up the bid to $100 an acre. Gilman Carlson testified to the same effect and also that there was a rumor that there was a defect in title to the farm land. The master testified that the sale was held on a favorable day, a large crowd was present and that he moved through the crowd and solicited individuals to bid. He kept the bid open for more than an hour and he heard no such rumors. Gilman Carlson said he expected to bid at the sale but changed his intention after he heard the rumors. He sup-

posed the sale would be beyond his means and that he could not handle it. He admitted on cross-examination that he had made no definite arrangements to buy the land, prior to the sale. It is not shown clearly that he attended with the intention to buy or that the rumors prevented him from doing so.

The rule is firmly established that the chancellor possesses a broad discretion in approving or disapproving a master's report of sale, and that his decision will not be disturbed unless there is a clear abuse of that discretion. (*Levy* v. *Broadway-Carmen Building Corp.* 366 Ill. 279; *Quigley* v. *Breckenridge,* 180 id. 627.) Appellants urge, however, that a chancellor has no authority to disapprove a master's sale in partition if the only ground of disapproval is that the highest bid at such sale was inadequate, even if a higher price has been guaranteed on resale. They say such sale can be disapproved only if the inadequacy is so gross as to shock the conscience of a court of equity or so great as to amount to fraud. It must be admitted that authority can be found for such a view in some of the earlier cases in this State. However, recent cases decided by this court have definitely repudiated that rule, and we need not review the earlier cases cited by appellants. It is sufficient to say that they no longer state the law. In *Levy* v. *Broadway-Carmen Building Corp. supra,* this court pointed out the distinction between executed sales and master's sales which are mere offers to buy from the court. We stated that it was from the former class of cases that the rule that stability must be given to judicial sales originated, and that the reason for the rule did not apply to master's sales, which are not sales in a legal sense until confirmed by the court. We said that the court, being in fact the vendor, may consent or not, in its discretion. That was a foreclosure suit, and it is true, as appellants point out, we limited our discussion to the power of a court of chancery

to approve or disapprove a master's report of sale in a foreclosure suit.

In *Straus* v. *Anderson,* 366 Ill. 426, decided at the next term of court after the decision in the *Levy case, supra,* there was a further recognition of the different rules applying to consummated sales and those requiring the confirmation of a court. On page 431 of the opinion Mr. Justice Herrick ably discussed the question as follows: "In approaching the decision of the issue whether the trial court should have refused to confirm the sale because of the inadequacy of the price bid, it is well to recur to the pertinent principles governing such sales. The question as to the power of a court of equity to refuse to confirm a sale or set aside a sale for mere inadequacy of price has been the subject of much judicial discussion. It would seem, at first impression, that there was much confusion and a great contrariety of opinion amongst the courts and textwriters upon the subject. This apparent lack of harmony has arisen because of the failure to differentiate between the condition of the record before the court as to the sale attacked or sought to be vacated. The setting aside of an executed sale is one character of proceeding. The opposition to the approval of a purported sale requiring the confirmation of the court for its validity and finality, falls into a different classification. In the first mentioned class the sales have been completed, generally, either by reason of the fact that no approval of the court is required, or where such approval, being requisite, has been obtained. Sales grouped within this category will ordinarily not be set aside because of inadequacy of price in the absence of proof of fraud or some irregularity in the sale. It is out of this division of sales from which the principle emerged that stability should be given judicial sales, and that courts would not void the same in the absence of fraud or some irregularity in the proceeding attendant upon the sale. In

those cases the buyer has an interest or right in the property. In the second division the court, in legal contemplation, is the seller. The officer conducting the sale acts as the agent of the court in offering the property for sale. His declaration striking off the property to the highest bidder carries with it no interest or title to the property. The bid is only an offer to buy. Until, and unless, the court confirms the report of sale made by the officer conducting the sale, there is no sale. In the latter character of sales the chancellor has a broad power in their supervision made under his direction and may, acting in his judicial discretion, confirm, or disapprove any such sale. (*Miller* v. *Miller,* 332 Ill. 177; *Hart* v. *Burch,* 130 id. 426.) In the latter type of sales the court may refuse to confirm the sale merely because of the inadequate price for which the premises are struck off." The *Straus case* was also a foreclosure suit, but the reason for the rule as to foreclosure sales applies with equal force to partition sales. That this is true was expressly recognized in *Sauter* v. *Pickrum,* 373 Ill. 541, at page 544, which was a partition suit. In that case we quoted with approval from *Straus* v. *Anderson, supra,* and said partition suits fell into the second class—those which are not sales until confirmed by the court, and that the court, being in fact the vendor, is allowed a broad discretion in accepting or rejecting the bid. A review of those cases clearly demonstrates that this court has adopted the rule that in sales which are mere offers to buy until confirmed by the court, the court may refuse to confirm the sale because of inadequacy of price, alone, without any showing of such a gross inadequacy as to shock the conscience or amount to fraud. The rule is founded in reason and we adhere to it. Here a minimum bid of twenty-four per cent more than the highest bid received at the master's sale has been guaranteed as the first bid on resale; appellants, who are co-tenants of the property, will receive their proportionate share of such increase, and the

chancellor did not abuse his discretion in ordering the premises resold before appellants had acquired any vested rights in the property.

Furthermore, the rule above stated conforms to the intention of the Partition act. As above noted, section 27 of the act forbids the sale of property for less than two thirds of its appraised value. Section 29 states that if exceptions to the report of the master are filed, the court may "in its discretion, at once proceed to hear such exceptions and sustain or overrule the same." Thus the chancellor is expressly given a discretion whether to approve or disapprove the sale. To hold that he may not disapprove unless the price bid is so grossly inadequate as to shock the conscience or amount to fraud would nullify any discretion to disapprove for inadequacy of price, for it is obvious a bid of at least two thirds the value of property could not be that inadequate.

Appellees have assigned cross-error on that portion of the decree which provided that "the bidders be reimbursed for their expenses in attempting to sustain said sale, and the amount of reimbursement be reserved for the further consideration of the court." As we construe this provision, the only question reserved is as to the amount of expenses incurred, which would include attorney's fees. The rule is that nothing can be allowed and taxed as costs but items of costs designated by the statute to be so allowed and taxed. *Wilson* v. *Clayburgh*, 215 Ill. 506.

The decree will be reversed in part and the cause remanded, with directions to allow only such costs, if any, as are provided by statute.

*Affirmed in part, reversed in part*
*and remanded, with directions.*

Mr. JUSTICE GUNN, specially concurring:

I concur in the result reached in this case. There was, in my opinion, sufficient showing made to justify us in

holding the chancellor did not abuse his discretion in. setting aside the sale here involved. I do not agree with the expressions contained in the opinion that the rules pertaining to confirmation of partition sales expressed in *Shultz* v. *Milburn,* 366 Ill. 400, and prior thereto, have been repudiated or overruled.

Mr. JUSTICE STONE, dissenting:

I am unable to concur in the conclusion reached by the majority opinion. It not only overrules numerous cases previously decided by this court and tends to make an auctioneer of the chancellor, but, in my opinion, destroys the incentive of prospective purchasers to attend the sale, resulting in unsatisfactory sales by reason of lessened competition, while it offers a premium to a prospective purchaser who chooses to wait until the sale is had by the master under such circumstances, and speculate on the possibility of buying the property from the court.

As this court has said in *Shultz* v. *Milburn,* 366 Ill. 400, and numerous other decisions, public policy requires there should be stability to all judicial sales and that they should not be disturbed for slight causes, and while an accepted bidder acquired no independent right to have his purchase completed, it is not intended that an interested party may stand by and refrain from bidding on land with the expectation that after he has learned the highest offer he may have the sale disaffirmed purely by the offer of a larger sum, though the master's sale was not for a grossly inadequate sum.

Mr. JUSTICE SHAW concurs in this dissenting opinion.