(No. 29999.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* NATHAN SCHWARTZ *et al.*—(FRANCIS X. GALLAGHER, Appellant.)

*Opinion filed May 22, 1947.*

JOSEPH KADISON, (NORMAN H. ARONS, of counsel,) both of Chicago, for appellant.

WILLIAM J. TUOHY, State's Attorney, (JACOB SHAMBERG, and JULIA M. HAGERTY, of counsel,) all of Chicago, for appellee.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

This is a suit in chancery brought in the circuit court of Cook county by the People of the State of Illinois to foreclose the lien of delinquent taxes against a piece of property in Chicago. The property is located at 6823 South Kenwood Avenue, and is improved with a one-story brick commercial garage.

The suit was instituted on November 8, 1945, after an offer had been made to the board of county commissioners by attorney for appellant to bid the sum of $1500 for the property at public sale, if the board would request the State's Attorney to commence an action to foreclose the taxes and the court would order such a sale. General taxes due up to and including 1940 amounted to $4040.99 principal, with a total delinquency including interest and

penalties of $10,414.63. The county board complied with the request, and the State's Attorney commenced foreclosure proceedings. The circuit court entered a foreclosure decree finding a guaranteed bid of $1500 had been made, and setting that amount as the minimum bid to be considered. The tax sale was then held, and appellant, Francis X. Gallagher, bid the sum of $1500 for the property. On the hearing on the county treasurer's report of sale, the chancellor asked the State's Attorney to present for examination the information with respect to the property which induced him to file the proceedings. This information showed that the property had a monthly gross income of $200. The court thereupon entered an order disapproving the sale, on the grounds that the amount bid was "grossly inadequate and insufficient." From that order appellant, the bidder, brings this appeal. The only issue here involved is whether the chancellor acted properly in disapproving the report of sale solely on the grounds of inadequacy of the amount bid.

The authority of a court of equity to disapprove a sale solely on the grounds that the amount bid was inadequate was examined at length by this court in the case of *Ryerson* v. *Apland,* 378 Ill. 472. After stating appellant's contention that the chancellor may not disapprove a partition sale if the only ground for disapproval is that the highest bid was inadequate, we said, "It must be admitted that authority can be found for such a view in some of the earlier cases in this State. However, recent cases decided by this court have definitely repudiated that rule, and we need not review the earlier cases cited by appellants. It is sufficient to say that they no longer state the law."

This statement was apparently directed to part of what was said in *Schultz* v. *Milburn,* 366 Ill. 400, where a cause was reversed because the chancellor set aside a sale on account of inadequacy. There were special circumstances in that case. It was the third sale, and the additional offer

amounted to only about $250 in a sale of over $22,000. The language used there was directed to that fact, and, the sale having been vacated because of this slight difference, the action of the chancellor was held to be arbitrary. In the same case we said: "A sale by a master in chancery is not, until confirmed by the court, a sale in a legal sense. The chancellor has a broad discretion in its approval or disapproval. The highest bidder whose bid has been returned to the court as the best offer acquires no interest in or any right to the land and his bid is a mere offer to purchase. Confirmation is final consent, and the court being in fact the vendor, may consent or not, in its sound judicial discretion."

It is to be observed that both the *Ryerson case* and the *Milburn case* were partition suits. In *Straus* v. *Anderson*, 366 Ill. 426, we pointed out the disinction to be observed in setting aside executed sales and those sales requiring confirmation of the court for validation, and commented thus: "In the first mentioned class the sales have been completed, generally, either by reason of the fact that no approval of the court is required, or where such approval, being requisite, has been obtained. Sales grouped within this category will ordinarily not be set aside because of inadequacy of price in the absence of proof of fraud or some irregularity in the sale. It is out of this division of sales from which the principle emerged that stability should be given judicial sales, and that courts would not void the same in the absence of fraud or some irregularity in the proceeding attendant upon the sale. In those cases the buyer has an interest or right in the property. In the second division the court, in legal contemplation, is the seller. The officer conducting the sale acts as the agent of the court in offering the property for sale. His declaration striking off the property to the highest bidder carries with it no interest or title to the property. The bid is only an offer to buy. Until, and unless, the court confirms the

report of sale made by the officer conducting the sale, there is no sale. In the latter character of sales the chancellor has a broad power in their supervision made under his direction and may, acting in his judicial discretion, confirm, or disapprove any such sale."

In *Levy* v. *Broadway-Carmen Building Corp.* 366 Ill. 279, a case in which an upset price was fixed by the court, we said: "Sales by masters are not sales in a legal sense, until they are confirmed. Until then, they are sales only in a popular sense. The accepted bidder acquires no independent right to have his purchase completed, but remains only a preferred proposer until confirmation of the sale by the court, as agreed to by its ministerial agent. Confirmation is final consent, and the court, being in fact the vendor, may consent or not, in its discretion."

These three cases, appearing in the same volume, seem to sustain the same principle of law, and, in fact, in the late case of *Anthony* v. *Gilbrath,* 396 Ill. 125, the *Milburn case* is cited upon the point that a chancellor's discretion in approving or disapproving masters' reports of sales must not be an arbitrary one.

There is some distinction between a foreclosure or an execution sale and a partition sale, because in the former there is a right of redemption, but even in cases where there is redemption slight circumstances will furnish sufficient ground for equitable interference. *Magnes* v. *Tobias,* 337 Ill. 605.

The instant case is one which falls in the second class of cases described in the quotation from the case of *Straus* v. *Anderson.* Here the action objected to is the order of the court disapproving the report of sale. At the time the order was entered, the sale had not been consummated by confirmation, and the court could, under the rule announced in *Straus* v. *Anderson,* consider all of the facts, including the income of the property, in addition to inadequacy of price. In *People* v. *Anderson,* 380 Ill. 158, it is true that

we said that inadequacy of price, in the absence of fraud or some irregularity in the sale, was insufficient grounds for setting aside a tax foreclosure sale. On analysis, it appears that, in *People* v. *Anderson,* the chancellor had approved the sale, and a year later a motion was made to vacate it, and the case, therefore, clearly falls within the first class of cases described in the quotation from *Straus* v. *Anderson.* Furthermore, in *People* v. *Anderson,* we stated, "The rule is firmly established that the chancellor possesses a broad discretion in approving or disapproving a report of sale, and that his decision will not be disturbed unless there is a clear abuse of discretion." In other words, the rule that a chancellor's action on a report of sale will not be disturbed is two-edged, and operates to affirm a disapproval of the report of sale as well as to affirm an approval of such report, unless the chancellor has clearly abused the discretion with which he is vested.

Applying this rule to this case, the chancellor had power to approve or disapprove the sale. His decision to disapprove the sale should stand unless the record shows an abuse of judicial discretion. The record shows that the original decree of sale, entered on June 4, 1946, ordered the county treasurer to "entertain no bids * * * in an amount less than the following: Parcel No. 1, $1500.00." The action of the court in fixing an upset price was in itself an exercise of discretion as to what was a proper bid for the property. In *Levy* v. *Broadway-Carmen Building Corp.* 366 Ill. 279, we held it was proper to fix an upset price below which a foreclosure sale would not be approved. This minimum price is not, however, an approval in advance of the sale, if made for that amount.

In addition to the showing in the record that an upset price had been fixed in the original decree of sale, the report of proceedings shows that on August 1, 1946, when the report of sale came on for hearing, the presiding judge, who was not the same judge who had entered the original

decree, examined the State's Attorney's file with regard to the property, including the letter to the county board guaranteeing a bid of $1500, an information sheet stating further details as to the property, and a picture of the property. From an examination of these documents the court learned that the property had a monthly rental of $200, and was assessed in 1939 at $5414. After considering these facts, the chancellor entered his order disapproving the sale. There is nothing in the record to indicate whether similar information was available to the chancellor at the time the upset price was fixed, although the decree recites that there was oral and documentary evidence, and that the court was "duly advised in the premises."

On this state of the record, it does not clearly appear that the chancellor abused his discretion in disapproving the sale. The evidence before him indicated that the gross rental from the property would exceed the purchase price in eight months' time. The assessed value of the property in 1939, which he was bound to know was less than its actual value, was $5414. There was nothing to indicate the basis on which his predecessor had determined $1500 to be a fair upset price. In the face of such evidence, we cannot say that the chancellor acted unreasonably in disapproving the sale on the grounds of gross inadequacy and insufficiency.

Plaintiff in error contends that the board of county commissioners had the power to fix minimum bids on property sold at tax foreclosure, and that the court may not nullify the findings and action of the county board with respect thereto. This is a misconception of the law. Section 4 of article IX of the constitution of 1870 requires the General Assembly to provide for the return to some general officer of the county of all unpaid taxes, and further provides that "there shall be no sale of said property for any of said taxes or assessments but by said officer, upon the order or judgment of some court of record." This

286

section has been implemented by the legislature, (Ill. Rev. Stat. 1945, chap. 120, par. 697,) which has provided for the foreclosure of tax liens in equity, in any court of competent jurisdiction, and for the sale of the property "under the order of the court." The legislature also provided an alternative method of enforcing the lien against the rents and profits of the land, under certain circumstances, but provided that "all sales made under this section shall be conducted under the order and supervision of the court by the county collector." The foreclosure of liens is a judicial process, and no action by the board of commissioners in attempting to compromise the taxes is in any way binding on the court in which the foreclosure suit is brought.

The order of the circuit court is affirmed.

*Order affirmed.*