LYONS SAVINGS AND LOAN ASSOCIATION, n/k/a Lyons Savings, Plaintiff-Appellee, v. GASH ASSOCIATES *et al.*, Defendants-Appellants.

First District (4th Division) No. 1—88—3735

Opinion filed September 29, 1989.

Gary L. Starkman, Malcolm S. Kamin, and Thomas F. Sax, all of Arvey, Hodes, Costello & Burman, of Chicago, for appellants.

James M. Crowley, of Garvey & Novy, Ltd., Harvey J. Barnett and Martin D. Tasch, both of Harvey J. Barnett & Associates, Ltd., and Thomas T. Burke, William E. Ryan, and Barry A. Springer, all of Burke & Ryan, all of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Gash Associates (Gash) appeals from the trial court's approval of a sheriff's sale of commercial property located in Rosemont, Illinois, pursuant to a mortgage foreclosure action filed by Lyons Savings and Loan Association (Lyons) and others. Gash argues that the trial court should have disapproved the sheriff's sale because it awarded the property at less than its fair market value to the Village of Rosemont

(the Village), which bid upon the property at the sheriff's sale during the pendency of the Village's action to acquire the property in condemnation proceedings. Because we find no abuse of the trial court's discretion in approving the sheriff's sale under the facts of this case, we affirm.

Gash is an Illinois general partnership formed to acquire ownership of the commercial property at issue herein. Title to the property was originally held by Gash in a land trust, and Gash owned the entire beneficial interest in the trust. Gash sold its beneficial interest in the trust to a third party in November 1983 for $6.8 million. In consideration for this sale, Gash received a nonrecourse wrap around note in the amount of $5 million and a nonrecourse note in the amount of $900,000. Each of the notes was collateralized by a trust deed on the property to secure that portion of the purchase price that was to be paid in the future. The purchaser fell behind in its payments to Gash, and as a result, Gash filed suit to foreclose the trust deed in June 1985. This action was dismissed by stipulation of the parties upon tender of the delinquent payments to Gash, but was reinstituted when payments again became delinquent.

The trust deed Gash sought to foreclose was junior to three prior mortgages, which were also the subject of foreclosure suits eventually consolidated with Gash's foreclosure action: (1) a trust deed secured by a note held by Northwestern National Life Insurance Company (Northwestern National) in the principal amount of $1.55 million; (2) a mortgage to American National Bank and Trust Company (American National) in the principal amount of $1 million; and (3) a mortgage held by Lyons in the principal amount of $2.5 million.

Each of the mortgagees, including Gash, moved for the summary entry of judgment of foreclosure. The awards for principal, interest, attorney fees and costs were determined by the court to be: Northwestern National, first mortgagee, $913,947.99; American National, second mortgagee, $1,138,122.53; and Lyons, third mortgagee, $3,064,197.35.

Gash thereafter filed notice of sheriff's sale, and the property was scheduled for sale on July 21, 1987. On July 14, 1987, Gash received an assignment of the beneficial interest in the land trust holding title to the property in exchange for the amount due Gash in its mortgage foreclosure judgment. After notice of sale was filed, but prior to sale, the Village offered to purchase the property for $3.8 million. Gash refused the offer, but filed a motion to continue the sheriff's sale so that it could negotiate a purchase of the property with the Village. The trial court denied Gash's motion to continue the sheriff's sale. On

July 20, 1987, Gash filed a petition for bankruptcy in the Federal court. On the same day that Gash filed its petition for bankruptcy, the Village filed a petition to condemn the property pursuant to an ordinance that had been adopted approximately six weeks earlier. The bankruptcy petition automatically stayed both the condemnation proceeding and the court-ordered sheriff's sale of the property pursuant to the mortgage foreclosure actions.

Thereafter Gash, Northwestern National, and American National entered into an agreed order in Federal court to lift the automatic stay in the bankruptcy proceeding. This allowed both the condemnation action and the sheriff's sale to proceed. The foreclosure sale was held on May 26, 1988. Northwestern National and American National bid the value of their respective claims. The Village bid $3.8 million, the same amount it had previously offered Gash to purchase the property. Bidding by Lyons and the Village continued until the bid submitted by the Village for $4,005,000 was accepted. Lyons' final bid was $4 million. The sheriff's report of sale and distribution were filed the following day.

American National, Northwestern National, and Lyons thereafter moved to approve the sale. Gash objected on the basis that the amount bid by the Village was less than the amount which Gash would receive from the Village as just compensation for its condemnation of the property. Gash also argued that the Village's bid amount was grossly inadequate. In an order entered in June 1988, the trial court disapproved the sale on the grounds asserted by Gash and, because trial of the condemnation action was scheduled for October 20, 1988, stayed the foreclosure sale until October 21, 1988, in order to enable the condemnation trial to proceed.

On October 20, 1988, however, the condemnation trial was continued, and, pursuant to Gash's motion, the trial court extended the stay of the sheriff's sale for 10 days, until November 2, 1988. The trial court denied Gash's motion to further continue the stay of the foreclosure sale or to restrain the Village from bidding at the sale. The sheriff's sale was held on November 3, 1988, and the Village was again the successful bidder at $4,005,000. Lyons moved for approval of this sale, and Gash again objected, on the grounds that the amount bid by the Village was grossly inadequate, and that the Village would have to pay a greater amount for the property in its condemnation suit.

To support its argument that the Village's bid price was grossly inadequate, Gash presented the affidavits of three appraisers to the effect that the value of the property at its highest and best use as of July 20, 1987, was between $5 million and $5.8 million. Gash also pre-

sented the affidavit of an individual representing an entity which was allegedly willing to purchase the property for $5 million, contingent upon the dismissal and perpetual nonreinstatement of the condemnation proceeding.

Lyons, Northwestern National, and American National all contested Gash's arguments, claiming *inter alia* that the Village's bid price was not grossly inadequate. The Village presented the affidavits of two appraisers to the effect that the property was worth $3.8 million. Following argument, the trial court entered an order that confirmed the sheriff's sale, disbursed the sale proceeds, and ordered the issuance of a sheriff's deed. A deficiency judgment was entered against Gash in the amount of $1,906,236.41. Gash appeals.

Gash argues that the trial court abused its discretion in confirming the foreclosure sale because the price was inadequate and because the sale was tainted by the irregularity of the successful bidder depressing the price by filing a condemnation action. With respect to the inadequacy of the Village's bid, Gash contends that Illinois law recognizes two distinct legal standards upon which to determine whether a foreclosure sale should be set aside. Gash asserts that when a foreclosure sale has been judicially approved and a third party seeks to set it aside, the sale may be disapproved only upon a showing that the bid price was grossly inadequate and that there was an irregularity in the sheriff's sale. Gash argues that when the sale is contested before judicial approval, however, the standard is less stringent, and that a showing of inadequacy of price, in and of itself, is sufficient to deny approval of the sale. To support this distinction between pre-judicial and post-judicial approval of a sheriff's sale, Gash relies upon *People v. Schwartz* (1947), 397 Ill. 279, 73 N.E.2d 279, *Ryerson v. Apland* (1941), 378 Ill. 472, 38 N.E.2d 712, *Straus v. Anderson* (1937), 366 Ill. 426, 9 N.E.2d 205, *Flemming v. Tallerday* (1919), 289 Ill. 508, 124 N.E. 613, *McDaniel v. Wetzel* (1914), 264 Ill. 212, 106 N.E. 209, and *VanGundy v. Hill* (1914), 262 Ill. 162, 104 N.E. 147.

■ Gash did not present this argument to the trial court, however, and the question is therefore not properly presented for review. Gash argued at the trial level that the court could disapprove the sheriff's sale if the Village's bid price were *grossly* inadequate, and Gash is bound by this legal argument on appeal. (See, *e.g., Thomas v. First National Bank* (1985), 134 Ill. App. 3d 192, 212, 479 N.E.2d 1014.) Nor can we say on this record that the trial court erred when it determined that the amount offered by the Village at the sheriff's sale was not grossly inadequate. Consequently, we find Gash's argument regarding the inadequacy of the Village's bid price, as the sole

factor to determine whether the sale should be set aside, insufficient ground to disturb the trial court's ruling.

▪ Gash also argues on appeal that the Village's pending condemnation proceeding depressed the value of the property, and thus, allowed the Village to circumvent its constitutional obligation to pay just compensation in its condemnation suit. In this regard Gash asserts that "[f]or more than a century, Illinois law has recognized the inherent unfairness in this procedure by demanding that pending condemnation litigation precede any potential foreclosure sale." To support this argument, Gash cites to *Colehour v. State Savings Institution* (1878), 90 Ill. 152. However, *Colehour* does not stand for the proposition that condemnation proceedings must always precede any potential foreclosure sale. Instead, *Colehour* held that when property which has been condemned is the subject of a subsequent foreclosure action, the mortgagee's interest is in the condemnation award. In our view, *Colehour* does not support Gash's claim that the foreclosure action should have been stayed in the case at bar pending resolution of the Village's condemnation action.

Gash further appears to contend that this court should adopt a *per se* rule that condemnation proceedings must always be resolved prior to a mortgage foreclosure sale. Gash argues that such a rule would be appropriate because (1) condemnation produces a higher value for the property, since a condemnation judgment must be based upon the fair market value of the property, (2) property is always sold at a depressed price at a foreclosure sale, and (3) condemnation proceedings have a deleterious effect on the marketability of the property. Gash cites no decision which has adopted this *per se* rule, which would effectively engraft by judicial decision an exception onto the Illinois statute regarding mortgage foreclosures. (Ill. Rev. Stat. 1987, ch. 110, par. 15—1101 *et seq.*) We decline to judicially legislate such an exception.

▪ The standard for approval of the sheriff's sale which the trial court applied to the instant cause is that stated in *Illini Federal Savings & Loan Association v. Doering* (1987), 162 Ill. App. 3d 768, 516 N.E.2d 609. In *Illini Federal*, the court observed:

> "It is settled that a court of equity has wide discretion in supervising judicial sales to insure that such sales are conducted according to law and free from fraud which could deprive the equity owner of valuable rights. [Citations.] This discretion is not unlimited, however, and it is a firmly established rule that unless there is evidence of mistake, fraud, or violation of duty by the officer conducting the sale, mere inadequacy of price

alone is not sufficient cause for setting aside a judicial sale. [Citations.] It is the policy of the law to give stability and permanency to judicial sales [citation], and, since '[i]t has long been recognized that property does not bring its full value at forced sales, and that the price depends on many circumstances from which the debtor must expect to suffer a loss' [citation], it follows that '[m]ere inadequacy of price is no reason for upsetting a judicial sale unless there are other irregularities' [citation]." 62 Ill. App. 3d at 771-72; see also *Standard Bank & Trust Co. v. Callaghan* (1988), 177 Ill. App. 3d 973, 532 N.E.2d 1015. Applying the standard of *Illini Federal* to the facts of this case, we find no abuse of discretion in the trial court's approval of the sheriff's sale of the property to the Village for $4,005,000. The condemnation action filed by the Village did not amount to fraud, mistake or illegal practice, any one of which is required to set aside the sheriff's sale. We cannot say that the trial court erred in its determination that the amount bid by the Village was not grossly inadequate. Consequently, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.