**In re Nathaniel JONES and Ida Jones, Debtors.**

**Bankruptcy No. 97 B 28408.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

April 24, 1998.

1014

Ira T. Nevel, Chicago, IL, for Plaintiff.

Milton Yondorf, Chicago, IL, for Defendant.

Jack McCullough, Chicago, IL, Trustee.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

Bankers Trust Company of California ("Bankers Trust"), a creditor of Nathaniel and Ida Jones (the "Joneses"), moves this Court to modify or annul the automatic stay regarding certain real property which was the subject of an Illinois mortgage foreclosure proceeding.[1] Subsequent to a judicial auction of the property, but before the sale was confirmed as required by Illinois law, the Joneses declared bankruptcy under chapter thirteen of the Bankruptcy Code.[2] As Sec-

---

1. The United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code" or the "Code"), permits a court to grant relief from the automatic stay imposed by Code Section 362 in a variety of forms, including "terminating, annulling, modifying, or conditioning" the stay. 11 U.S.C. § 362(d). Annulling the stay is unique from the other remedies in that it dismantles the stay retroactively, unlike the other provisions, which operate prospectively. *See Soares v. Brockton Credit Union*, 107 F.3d 969, 976–77 (1st Cir.1997); 3 *Collier on Bankruptcy* ¶ 362.07[1], at 362–79 (Lawrence P. King, et al. eds., 15th ed. rev.1998). "Lifting" the stay is popular terminology generally used to describe prospective stay relief. *See* 1 David G. Epstein, *et al., Bankruptcy* 266, 351 & n. 10 (1992).

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 by reference from the United States District Court for the Northern District of Illinois under its General Rule 2.33(A). A motion for relief from the stay constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(G).

2. As the state court has not yet confirmed the sale, there is no functional difference between the forms of relief requested. *See* discussion *supra* note 1.

tion 1322 of the Code allows chapter thirteen debtors to cure "a default with respect to, or that gave rise to, a lien on the debtor's principal residence ... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law," 11 U.S.C. § 1322(c)(1), the Joneses assert that they may still cure their default despite the auction, maintaining that a foreclosure sale under Illinois law is incomplete until court confirmation. Because they may still cure their default, they argue, cause to lift the stay does not exist. For the reasons articulated below, the Court denies Bankers Trust's Motion.[3]

### Discussion

■ The sole issue before this Court is whether, under Illinois law,[4] a "residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law" when the proverbial gavel drops at an auction conducted pursuant to a court-ordered foreclosure sale,[5] or at the later point of the state court's entry of the order of confirmation in the sale. In the case of the former, the Joneses would no longer possess the ability to cure their default, and, pursuant to Section 362(d)(1) of the Bankruptcy Code, "cause" would exist for lifting the stay.[6] Otherwise, the Joneses may still cure their default, and such "cause" does not exist.

■ Three of the judges of this District's bankruptcy bench have recently held that the foreclosure sale under Illinois law occurs at the "drop of the gavel." Despite two thoughtful opinions[7] grounded on what one district judge called "cogent policy arguments," *In re Crawford*, 217 B.R. 558, 559 (N.D.Ill.1998), three separate district judges have reversed their bankruptcy counterparts, holding the Illinois foreclosure sale complete only after confirmation. *See In re Crawford*, 217 B.R. 558 (N.D.Ill.1998) (Shadur, J.), *rev'g* 215 B.R. 990 (Bankr.N.D.Ill. 1997) (Barliant, J.);[8] *Christian v. Citibank, F.S.B.*, 214 B.R. 352 (N.D.Ill.1997) (Bucklo, J.), *rev'g In re Christian*, 199 B.R. 382 (Bankr.N.D.Ill.1996) (Wedoff, J.); *McEwen v. Federal Nat'l Mortgage Ass'n*, 194 B.R. 594 (N.D.Ill.1996) (Grady, J.) (reversing Bankruptcy Judge Schmetterer's bench ruling). As noted by the bankruptcy judges (preceding their reversal) in both *Christian*, 199 B.R. at 387, and *Crawford*, 215 B.R. at 992 n. 2, the law of this District recognizes that individual district judges in multi-judge districts cannot establish precedent binding

3. At the hearing on the Motion, Bankers Trust asserted an additional ground upon which relief from the stay should be granted: unpaid post-petition arrearage of the amount owed under the installment contract to purchase the property. On this independent ground, this Court ruled that, in the absence of the Joneses' correction of their unfulfilled obligation, the automatic stay will be modified as of April 30, 1998.

This Opinion only addresses the first ground for relief: that the Joneses can no longer cure their default.

4. It is undisputed that Illinois law, and not the law of another state, applies.

5. That is, "when the auctioneer, sheriff, or other party conducting the foreclosure sale bangs the gavel on the last bid." Keith M. Lundin, *Chapter 13 Bankruptcy*, § 4.54, at 371 (2d ed. Supp. 1997–98).

6. Bankers Trust supports its Motion by claiming that the sale was already complete by the filing of bankruptcy, and the Joneses therefore, as of that time, no longer had an interest in the property. However, a possessory interest in real property is enough to bring the property into the bankruptcy estate under Code Section 541(a)(1) and thus

invoke the automatic stay. *See, e.g., 48th St. Steakhouse v. Rockefeller Group, Inc.*, 835 F.2d 427, 430 (2d Cir.1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988).

Bankers Trust's Motion is more appropriately based on Section 362(d)(1), in which relief may be granted from the stay for "cause," on the ground that the Joneses may no longer cure their default. If they could no longer cure their default, the Joneses would be left without alternatives under Code Section 1322. Although Section 1322 allows debtors essentially two manners, cure and modification, in which to treat secured claims, a chapter thirteen plan of reorganization may not modify the rights of holders of "a claim secured by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2); *see Christian*, 199 B.R. at 385–86. The Court will proceed to analyze the Motion under this rationale.

7. One of the three bankruptcy judges ruled from the bench without issuing a written opinion.

8. Although the bankruptcy court's opinion was dated January 21, 1997, this was apparently a typographical error—it should have reflected a January 21, 1998 date.

upon bankruptcy judges within that District. However, even though this Court is no more bound by the agreement of three district judges within this District, decisions by district (or, for that matter, bankruptcy) judges within the District are "entitled to substantial deference" and are considered persuasive authority. *Christian*, 199 B.R. at 387; *see In re Shattuc Cable Corp.*, 138 B.R. 557, 567 (Bankr.N.D.Ill.1992) ("In the interests of comity and uniformity, this Court strongly believes that the bankruptcy courts should give deference to and seek to follow the decisions of the district courts judges...."). Because the bankruptcy court is not obligated to follow the district court decisions, two tenable, yet inapposite, factions of thought have emerged.[9]

■ Having noted that this Court is not constrained by *stare decisis*, this Court adopts the view espoused by the district judges and holds that, under Illinois law, a foreclosure sale is indeed incomplete until court confirmation. Section 1322(c)(1) of the Bankruptcy Code explicitly designates the state-law foreclosure sale as the point at which the default may no longer be cured.[10] As state courts are the final arbiters of state law, this Court is bound by Illinois courts' pronouncements. And according to Illinois appellate courts, it "is well settled in Illinois law that a judicial foreclosure sale is not complete until it has been approved by the trial court." *Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill.App.3d 915, 228 Ill.Dec. 410, 413, 689 N.E.2d 282, 285 (1st Dist.1997); *see Fleet Mortgage Corp. v. Deale*, 287 Ill. App.3d 385, 222 Ill.Dec. 628, 630, 678 N.E.2d 35, 37 (1st Dist.1997); *Citicorp Savings of Ill. v. First Chicago Trust Co. of Ill.*, 269 Ill. App.3d 293, 206 Ill.Dec. 786, 793, 645 N.E.2d 1038, 1045 (1st Dist.), *appeal denied*, 162 Ill.2d 565, 209 Ill.Dec. 800, 652 N.E.2d 340 (1995); *Grubert v. Cosmopolitan Nat'l Bank of Chicago*, 269 Ill.App.3d 408, 206 Ill.Dec. 555, 558, 645 N.E.2d 560, 563 (2d Dist.1995).

---

**9.** Although it is generally true that "[n]obody is quite sure when a residence is 'sold at a foreclosure sale' for purposes of [the] new § 1322(c)(1)," *see* Lundin, *supra* note 5, *Introduction* at iii, the uncertainty which this Court faces is due in part to the fact that the Court of Appeals has not yet had the opportunity to address this issue.

By the time the *McEwen* bankruptcy court received the case on remand from the district court, a separate motion to modify the stay on an independent ground had been presented and granted, mooting the issue.

After the remand to the bankruptcy court in *Christian*, an appeal of the district court's decision was immediately taken to the Court of Appeals. The Court of Appeals is presently deciding whether it has jurisdiction in light of the remand. While this question was on appeal, the bankruptcy court, which was instructed by the district court on its remand to consider those other factors which led it to originally annul the stay, declined to change its decision. The bankruptcy court's decision to decline changing its prior ruling is presently on appeal before the district court.

No action has been taken by the parties in *Crawford* subsequent to the district court's remand of the proceedings to the bankruptcy court.

**10.** While the term "applicable nonbankruptcy law," as used in the Bankruptcy Code, includes both federal and state law, *see Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 2246–47, 119 L.Ed.2d 519 (1992), the substantive mortgage foreclosure law in question, as is usually the case, *see 12 Thompson on Real Property* § 101.01(d), at 344 (David A. Thomas, ed.1994), is law of the state. Although Congress could certainly prescribe federal bankruptcy law to change this result, *see* U.S. Const. art. 1, § 8, cl. 4, the text of Section 1322(c)(1) does not appear to have done as such. It may be argued that the language "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law," 11 U.S.C. § 1322(c)(1), is ambiguous, because it is susceptible of two constructions: the word "sold" (1) may be given independent meaning under federal bankruptcy law without regard to whether the sale has been concluded under state law, or it (2) may refer to the conclusion of the sale under state law. This Court does not find this clause ambiguous, and is convinced that the latter reading is proper. *But see McCarn v. WyHy Fed. Credit Union*, 218 B.R. 154, 159–62 (10th Cir. BAP 1998). To read this provision as defining "sold" under federal, as opposed to state, law would be interpreting the statute such as "to render one part inoperative, or to defy common sense." *Cook Inlet Native Assoc. v. Bowen*, 810 F.2d 1471, 1474 (9th Cir.1987) (internal citations omitted). In any event, even were Section 1322(c)(1) ambiguous, its legislative history reinforces the accuracy of this interpretation. *See* H.R.Rep. No. 103–835, 103d Cong., 2d Sess. 52, *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361 (Section 1322(c)(1) allows a "debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law.").

■ Perhaps, as Judges Barliant and Wedoff observed, the Illinois appellate court decisions rely on faulty reasoning. But that is not an issue for this Court. Pursuant to our system of federalism, in which the federal government may only act in accordance with a power enumerated in the Constitution, *see* U.S. Const. amend. X, state courts have been vested with the final say on the interpretation of state law.[11] *See* 28 U.S.C. § 1652 ("The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."). In the landmark case of *Erie R.R. Co. v. Tompkins,* Justice Brandeis recited Justice Holmes's words: "[T]he voice adopted by the State as its own ... should utter the last word."[12] 304 U.S. 64, 79, 58 S.Ct. 817, 823, 82 L.Ed. 1188 (1938) (quoting *Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co.,* 276 U.S. 518, 535, 48 S.Ct. 404, 409, 72 L.Ed. 681 (1928) (dissenting opinion)). And even in the absence of the Illinois Supreme Court directly addressing this issue, a federal court must nonetheless defer to state appellate court utterances unless it is convinced that the Illinois Supreme Court would decide differently:

An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed

by a federal court in deciding a state question. . . .

Here, the question was as to the construction and effect of a state statute. The federal court was not at liberty to undertake the determination of that question on its own reasoning independent of the construction and effect which the State itself accorded to its statute. That construction and effect are shown by the judicial action through which the State interprets and applies its legislation.

*Fidelity Union Trust Co. v. Field,* 311 U.S. 169, 177–78, 61 S.Ct. 176, 178, 85 L.Ed. 109 (1940).[13]

■ As to the contention that the Illinois appellate courts have expressed mere *obiter dicta,* even were this so, this Court would not have free reign to run roughshod over the principles dictated by the state courts. It is this Court's duty to surmise what the Illinois Supreme Court would say were it directly faced with the issue.[14] And there are few better ways to make that prediction than from an oft-repeated and apparently unanimous recapitulation of Illinois law by the Illinois appellate courts, whether it be dicta or a central holding of a case. *See, e.g., Towne Realty, Inc. v. Safeco Ins. Co. of America,* 854 F.2d 1264, 1269 n. 5 (11th Cir.1988). Even before the *Erie* era of deference to state court determinations of state law, Justice Cardozo remarked that with regard to a state court statutory construction decision,

even more compelling reasons to refrain from reinterpreting state law than faced by the *Erie* Court. *See Crawford,* 217 B.R. at 560 n. 3. In contrast to the facts in *Erie,* Section 1322(c)(1) provides an "express congressional directive to federal courts to follow state law." *Id.*

---

**11.** As state, and not federal, courts are empowered with the final say in interpreting state statutes, the argument that this Court should not impermissibly usurp the legislature's role by "rewriting" Illinois's mortgage foreclosure law in the name of statutory interpretation, in derogation of constitutional separation of powers principles, *see* U.S. Const. art. I, § 1, is but a red herring. Because the Illinois appellate courts have addressed the issue, this is solely a question of federalism. Section 1322's specific reliance upon state law only heightens this Court's conviction that the separation of powers issue is irrelevant. *See supra* note 13.

**12.** Or, as articulated by Judge Shadur, "Illinois state law is what the Illinois courts say it is." *Crawford,* 217 B.R. at 559.

**13.** In fact, as mentioned by Judge Shadur, a case under Section 1322(c)(1) presents this Court with

**14.** While in diversity cases, under the *Erie* doctrine, "a federal court must attempt to decide the case as the highest court of the state supplying the law would do," *Todd v. Societe BIC, S.A.,* 9 F.3d 1216, 1221 (7th Cir.1993), "the same principle may be applied for the same reasons, *viz.,* the underlying substantive rule involved is based on state law and the state's highest court is the best authority on its own law." *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967). *See supra* note 13.

the radiating potencies of a decision may go beyond the actual holding. A wise comity has decreed that deference shall at times be owing, though there may be lacking, in the circumstances, a strict duty of obedience.... In controversies so purely local, little gain is to be derived from drawing nice distinctions between dicta and decisions.

*Hawks v. Hamill*, 288 U.S. 52, 58–60, 53 S.Ct. 240, 242, 77 L.Ed. 610 (1933). As the "rule of *Erie* calls on us to apply state law, not, if we can be persuaded to doubt its soundness, to participate in an effort to change it," *Tarr v. Manchester Ins. Corp.*, 544 F.2d 14, 15 (1st Cir.1976), this Court's opinion of the state courts' interpretation of that law is of little relevance.[15]

Finally, this Court remains unconvinced that the Illinois Supreme Court would reach a contrary result. Although it has been contended that the Illinois appellate courts supported their proclamations with, at best, "two depression-era decisions of the Illinois Supreme Court dealing with substantially different foreclosure law," *Christian*, 199 B.R. at 388 (referring to *Straus v. Anderson*, 366 Ill. 426, 9 N.E.2d 205 (1937), and *Levy v. Broadway–Carmen Bldg. Corp.*, 366 Ill. 279, 8 N.E.2d 671 (1937)); *see Crawford*, 215 B.R. at 997–98, the Court finds this argument unpersuasive.

**15.** In reversing Judge Barliant in *Crawford*, Judge Shadur commented: "It should be underscored that this Court has the greatest respect for the always-thoughtful Judges Barliant and Wedoff—and in this instance, for their understandable desire to avoid the unfortunate consequences that may flow from the [*Citicorp Savings of Ill. v. First Chicago Trust Co. of Ill.*, 269 Ill.App.3d 293, 206 Ill.Dec. 786, 645 N.E.2d 1038 (1st Dist. 1995)]-directed reading of Illinois mortgage foreclosure law. But what may be viewed as sound policy cannot be permitted to override the Illinois jurisprudence to which both the Bankruptcy Court and this [District Court] are obligated to adhere." 217 B.R. at 560 (footnote omitted).

**16.** Although the IMFL has since been amended, the changes are not germane to this discussion. The IMFL is presently codified at 735 Ill. Comp. Stat. 5/15–1101 *et seq.*

**17.** The Illinois Supreme Court reached an analogous result whether it based its reasoning on the court's general power of equity, on legislative intent, or on a statute in force which allowed the court a general power to refuse confirmation.

Before the Illinois legislature overhauled the state's mortgage foreclosure law in 1987 by enacting the Illinois Mortgage Foreclosure Law, Pub. Act No. 84–1462, § 2, 1986 Ill. Laws 4360, 4361 (1987) (the "IMFL"),[16] the Illinois Supreme Court had a long history of holding judicial confirmation sales conducted in chancery, including mortgage foreclosure sales, to be incomplete until a court had issued an order of confirmation. *See Levy*, 8 N.E.2d at 675 (With regard to mortgage foreclosure sales, "[s]ales by masters are not sales in a legal sense[ ] until they are confirmed."); *see also Blancett v. Taylor*, 6 Ill.2d 434, 128 N.E.2d 916, 918 (1955) (In a property partition proceeding, a "sale by a master in chancery is not in a legal sense a sale until confirmed by the court."); *People v. Schwartz*, 397 Ill. 279, 73 N.E.2d 279, 281–82 (1947) (same in tax foreclosure proceeding); *Ehrgott v. Seaborn*, 363 Ill. 292, 2 N.E.2d 99, 100–01 (1936) (same in sale of property of indebted deceased's estate); *Jennings v. Dunphy*, 174 Ill. 86, 50 N.E. 1045, 1046–47 (1898) (same in sale of property of indebted conservatee's estate).[17]

Although the IMFL's sale confirmation provision, 735 Ill. Comp. Stat. 5/15–1508, lists four circumstances in which a court may withhold confirmation,[18] and therefore might

*See Hart v. Burch*, 130 Ill. 426, 22 N.E. 831, 832 (1889) (After referencing a judicial sales treatise and noting that the authorities were uniform in holding that a "sale by master in chancery, or other person authorized to execute the decrees in chancery, is not, until confirmed by the court, a 'sale,' in the legal sense," the court cited that era's Ill.Rev.Stat. ch. 106, §§ 29–30, the predecessor of today's 735 Ill. Comp. Stat. 5/17–118, and concluded that even were the common law not clear, "no doubt would remain upon reading the statute of this state in respect thereto."); *see also Levy*, 8 N.E.2d at 675 (It was the legislature's intention that mortgage "foreclosure sales be made only upon such terms and conditions as were approved by the courts.").

**18.** Section 5/15–1508(b), in pertinent part, reads: "Unless the court finds that (i) a notice required ... was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done, the court shall ... enter an order confirming the sale."

appear at first glance to narrow the prior standard, this Court is unconvinced that such was the legislature's intention. A careful examination of the pre-IMFL case law suggests that these four circumstances were merely a roster of the common law reasons in which courts could refuse to confirm a foreclosure sale.[19] Although, as Judges Barliant and Wedoff recognized, "one of the principal reasons for the changes in Illinois foreclosure law made by the IMFL was to increase the prices obtained at foreclosure sales," *Christian*, 199 B.R. at 389; *see Crawford*, 215 B.R. at 1003, that purpose was implemented by incorporating certain other provisions in the IMFL. *See* Eric T. Freyfogle, *The New Judicial Roles in Illinois Mortgage Foreclosures*, 19 Loy. U. Chi. L.J. 933 (1988) (reviewing the IMFL's reforms).[20] Evidence has not been demonstrated which would impel this Court to conclude that Section 5/15–1508(b) furthered that purpose by bridling a court's ability to refuse confirmation.

An exploration of the Illinois House of Representatives and Senate floor debates lend credence to this conclusion. In proposing the adoption of the IMFL, Illinois Senator Lemke explained that the measure would "integrate[ ] existing Statutes [and[21]] Illinois case law and some new provisions in comprehensive foreclosure law."[22] Ill. S. Tr., June 23, 1986, at 173. In the following dialogue, which ensued upon Representative Greiman's solicitation of the House's concurrence in the Senate proposal, similar sentiment was echoed:

Representative Vinson: "I think you know that Amendment # 7 contains essentially a rewrite and codification of mortgage foreclosure law in Illinois. Is that not correct?"

Representative Greiman: "Yes, that is correct...."

Ill. H.R. Tr., June 26, 1986, at 62.

*Conclusion*

In summary, it is not this Court's task to decide the propriety of the Illinois law, but merely to forecast the Illinois Supreme Court's probable resolution of the issue. This Court believes the Illinois Supreme Court would today hold that the Illinois mortgage foreclosure sale is incomplete until court confirmation. Should a different result be desired, it must be advanced in an appropriate forum—the state or federal legislature, or in the Illinois courts. *See Crawford*, 217 B.R. at 559–60. Until then, this Court is compelled to hold that the Joneses may still cure their default, and that cause does therefore not exist to modify the automatic stay on this ground.

---

19. In fact, *Levy* enumerates all four grounds for refusal to confirm a mortgage foreclosure sale:

> [W]here the amount bid is so grossly inadequate that it shocks the conscience of a court of equity, it is the chancellor's duty to disapprove the report of sale.... If the chancellor finds, upon the coming in of the report of a master, that the sale as made is not to the best interest of all concerned and is inequitable, or that any fraud or misconduct has been practiced upon the master or the court, or any irregularities in the proceedings, it is his duty to set aside the sale as made and order another sale of the premises.

8 N.E.2d at 676 (quoting *Slack v. Cooper*, 219 Ill. 138, 76 N.E. 84, 86 (1905)). Section 5/15–1508(b) apparently codified these existing bases. Even were it not intended for this purpose, it certainly did not significantly change pre-IMFL law.

20. In fact, these reforms effected the legislature's goal not by limiting courts' discretion and reducing their control, but by "expand[ing] significantly the role of courts in supervising the foreclosure sale process." Freyfogle, *supra*, at 933. Listing the allowable justifications to deny confirmation would be contrary to that strategy..

21. The word "in" appears in the original transcript. This appears to be a transcription error, and the word likely should be "and."

22. The IMFL was proposed in the Illinois Senate by amending an existing House bill. *See* 1986 Ill. S.J. 2989 (June 23, 1986) (amendment no. 7).