603 N.E.2d 753 (1992)
236 Ill. App.3d 473
177 Ill.Dec. 683
In the Matter of the Application of Edward J. ROSEWELL, as County Treasurer and Ex-Officio Collector of Cook County, Illinois; for Judgment and Order of Sale Against Lands and Lots Upon Which General Taxes for Each of 2 or More Years Remain Due and Unpaid (Romel Koktapeh, Petitioner-Appellant,
v.
City of Chicago and Greater Southwest Development Corp., Respondents-Appellees).
No. 1-91-4061.
Appellate Court of Illinois, First District, Fifth Division.
October 9, 1992.
*754 Steck and Spataro, Chicago (Richard E. Steck, of counsel), for petitioner-appellant.
Kelly R. Welsh, Corp. Counsel, Chicago (Lawrence Rosenthal, Benna Ruth Solomon, Brian Trubitt, of counsel), for respondents-appellees.
Keck, Mahin & Cate, Chicago (Thomas J. McNulty, and Maria E. Stangel), for Greater Southwest Development Corp.
Presiding Justice McNULTY delivered the opinion of the court:
On October 29, 1991, at an annual scavenger sale of tax delinquent properties, Romel Koktapeh bid on and purchased certain real estate located at 6315 South Western Avenue, in Chicago. On December 13, 1991, the circuit court denied confirmation of the sale, subsequently affirming a sale to the City of Chicago (hereinafter referred to as the City). The tax purchaser appealed. For the reasons which follow we affirm.
In May 1991, Greater Southwest Development Corporation, (Greater Southwest) a neighborhood redevelopment group interested in redeveloping and stimulating economically blighted areas on Chicago's southwest side, selected the property at issue, also known as the Hi-Way Theater (hereinafter referred to as the Property) as a central location for a proposed cultural complex. In its rehabilitation plans, Greater Southwest projected that the anticipated center would create about 700 new jobs in the area, would generate new businesses, enhance other commercial and residential development, and provide for cultural training and entertainment for residents both locally and in the greater Chicago metropolitan area. Greater Southwest timely submitted its rehabilitation proposal to the City of Chicago's Department of Economic Development (DED) under the Tax Reactivation Program.
Under this program, the city would proceed to purchase the tax deed, and upon acquiring title, transfer its ownership to Greater Southwest. DED approved Greater Southwest's proposal and forwarded it to the city council for its approval. On July 24, 1991, the city council passed an ordinance unanimously approving Greater Southwest's proposal for returning the Property to productive tax status. The City then directed the County of Cook to enter a no cash bid on the Property when it was offered for sale.[1] Although the tax delinquency subcommittee of the Cook County Board of Commissioners approved *755 the City's no cash bid proposal, it was not until November 4, 1991, that the full Cook County Board approved the City's request and authorized the entry of a no cash bid for the property. However, on October 29, 1991, before the county's preparations to purchase were concluded, the Property was validly purchased by Romel Koktapeh at a scavenger tax sale conducted pursuant to section 235a of the Revenue Act. (Ill.Rev. Stat.1991, ch. 120, par. 716a.) On November 22, 1991, Edward J. Rosewell, county treasurer and ex-officio collector of Cook County, filed a motion in circuit court for a confirmation of the tax sale which had taken place. On December 3, 1991, petitions for leave to intervene and motions to deny confirmation were filed by the City of Chicago and Greater Southwest. The circuit court granted petitioners the right to intervene, and in its order of December 13, 1991, denied confirmation of the previous tax sale, ordered that the purchase price paid by Koktapeh be refunded, and further declared that the Property would remain delinquent and could be sold pursuant to law. Koktapeh's request for a stay of this order pending appeal was denied, and the Property was subsequently resold to the City.
On appeal, Koktapeh argues that the intervenors in the tax confirmation proceeding below (the City and Greater Southwest) lacked any interest in the parcel and therefore had no standing to intervene. Koktapeh asserts that the statutorily required interest for such intervention is that of an owner or equitable owner, liable for or affected by the taxes assessed against the property. In support of this contention, Koktapeh relies upon section 235 of the Revenue Act (Ill.Rev.Stat.1991, ch. 120, par. 716) governing the entry of judgments for sale on account of tax delinquency. That section does restrict objections to "persons interested in the lands or lots" and has been construed to require that an objector be connected with the title to the land in order to acquire standing to object to its sale on account of delinquent taxes. (People v. White & Co. (1918), 286 Ill. 259, 262, 121 N.E. 553.) While the section of the Revenue Act which provides for scavenger sales (Ill.Rev.Stat.1991, ch. 120, par. 716a) does provide that a hearing for such sales will be held according to section 235, case law does support the City's contention that the interest in title requirement applies only to proceedings for order of sale and not to proceedings for confirmation. (In re Application of Rosewell (1981), 93 Ill.App.3d 1106, 1109, 49 Ill.Dec. 409, 412, 418 N.E.2d 53, 56, (hereinafter Virginia) citing People v. Wrage (1960), 20 Ill.2d 55, 58, 169 N.E.2d 225, 227.) Furthermore, economic interests have long been recognized as sufficient to lay the basis for standing with or without a specific statutory provision for judicial review. (Greer v. Illinois Housing Development Authority (1988), 122 Ill.2d 462, 120 Ill.Dec. 531, 524 N.E.2d 561.) If the tax sale to petitioner Koktapeh were confirmed, the threatened economic injury to the City and Greater Southwest is clear. Greater Southwest has already incurred considerable expense in architectural fees and other items in preparation for receipt of the property. The City has incurred the expense of reviewing these plans and passing an ordinance authorizing the county to enter a bid. If the City receives the property, Greater Southwest will receive a quitclaim deed and will be able to develop the property according to its plans, thereby providing new jobs and increasing the property's value and the taxes to the City. Even though Koktapeh argues that his plans will also increase the revenue to the City, such assertion does not decrease the interests of the City and Greater Southwest in the confirmation proceedings. The City and Greater Southwest cannot be characterized as disinterested observers with a "speculative interest" as was Mississippi Bluff Motel, Inc. v. County of Rock Island (1981), 96 Ill.App.3d 31, 51 Ill.Dec. 334, 420 N.E.2d 748, when it attempted to intervene in a dispute over a zoning ordinance which it claimed was threatening to the bald eagle. The City and Greater Southwest had "distinct" and "palpable" interests "actually threatened" by confirmation of the sale to Koktapeh. (See Greer, 122 Ill.2d 462, 492, 120 Ill.Dec. 531, 545, 524 N.E.2d 561, 575.) Therefore, *756 we cannot say that the trial judge erred when he found that these parties had standing to intervene in the confirmation proceedings at bar.
Koktapeh next maintains that the trial court abused its discretion by failing to confirm a properly and regularly conducted judicial sale. Case law firmly establishes that the circuit court has broad discretion in affirming a judicial sale of tax delinquent property. In Schultz v. Milburn (1937), 366 Ill. 400, 403, 9 N.E.2d 199, 200, the Illinois Supreme Court stated:
"A sale by a master in chancery is not, until confirmed by the court, a sale in the legal sense. The chancellor has a broad discretion in its approval or disapproval. The highest bidder whose bid has been returned to the court as the best offer acquires no interest in or any right to the land and his bid is a mere offer to purchase. Confirmation is final consent * * * and the court may consent or not, in its sound judicial discretion. This discretion, unless abused, will not be interfered with by a court of review."
(See also, In re Application of Rosewell (1981), 93 Ill.App.3d 1106, 49 Ill.Dec. 409, 418 N.E.2d 53; Evans v. Hunold (1946) 393 Ill. 195, 65 N.E.2d 373; People v. Anderson (1942), 380 Ill. 158, 43 N.E.2d 997.) Although upholding a broad based judicial discretion, these cases make it clear that there are limits to the exercise of this power. In Shultz, it was found that mere inadequacy of price will not justify a court in refusing to confirm an otherwise valid tax sale, thereby depriving the tax purchaser of the "benefit of his bargain." (Shultz, 366 Ill. 400, 403, 9 N.E.2d 199, 200.) The Shultz court noted that public policy requires stability in judicial sales, and cautioned that such sales should not be disturbed for "slight causes," as courts would not "refuse to confirm a judicial sale or order a re-sale, on the motion of an interested party, merely to protect himself against the result of his own negligence." Shultz, 366 Ill. 400, 405, 9 N.E.2d 199, 201; see also Blancett v. Taylor (1955), 6 Ill.2d 434, 128 N.E.2d 916.
While inadequacy in price or the possibility of achieving a higher price may be slight causes (Shultz; Blancett), protecting the public interest is not. In In re Application of Rosewell (1983), 97 Ill.2d 434, 73 Ill.Dec. 748, 454 N.E.2d 997, (hereinafter Levin), the Illinois Supreme Court stated that "the court was not to be required to enter a judgment of sale and an order of sale regardless of circumstances and regardless of whether the public interest would be served." (Levin, 97 Ill.2d 434, 441, 73 Ill.Dec. 748, 751, 454 N.E.2d 997, 1000.) In this decision, the supreme court reversed the appellate court decision and affirmed the judgment of the circuit court which (like the trial court in the case at bar) had refused judicial confirmation of the sale of certain parcels of real estate, validly sold at a previously held scavenger sale. In that case, the grounds for objection to the disposition made at the scavenger sale were that civil actions for delinquent taxes had already been brought (by the county) against the owners of the parcels at issue, and if the scavenger sale was confirmed the county would collect only a fraction of the tax indebtedness. (See Levin, 97 Ill.2d 434, 436, 73 Ill.Dec. 748, 454 N.E.2d 997, 997.) Under these circumstances, the trial court as well as the supreme court found persuasive the county collector's argument that the scavenger sale should go unconfirmed. Even though there was no fraud or irregularity, mistake or accident in the scavenger sale (see Garrett v. Moss (1858), 20 Ill. 549), the exercise of judicial discretion allowed for a consideration of the public interest in having the county pursue the civil suit for back taxes rather than accepting the less desirable economic results of the validly conducted scavenger sale. The court's broad discretion in confirming such sales is also emphasized in Virginia, 93 Ill.App.3d 1106, 49 Ill.Dec. 409, 418 N.E.2d 53, which contrasts the scope of judicial discretion with the discretion afforded the county collector. (In that case it was determined that the county collector did not have the authority to withhold a parcel from confirmation in order to reoffer it for sale to the county.) In the case at bar, the public interest is *757 also at stake. Greater Southwest's plans for redevelopment of the property at issue promises not only a higher tax base and thus increased revenue for the city, but also 700 new jobs. Without implying that the tax petitioner's plans for the property would have been without value to the city, we cannot say that the trial court abused its discretion in denying confirmation of the scavenger sale and subsequently reselling the property to the city. We therefore affirm the judgment of the circuit court.
Affirmed.
MURRAY and GORDON, JJ., concur.
NOTES
[1] Section 216d of the Revenue Act (Ill.Rev.Stat. 1991, ch. 120, par. 697d) provides for "no cash" bids by the county itself, as trustee for all interested taxing districts.