CITICORP SAVINGS OF ILLINOIS, Plaintiff-Appellee, v. FIRST CHICAGO TRUST COMPANY OF ILLINOIS, as Trustee, *et al.*, Defendants-Appellees (Peter J. Bilanzic *et al.*, Petitioners-Appellants).

First District (6th Division)   No. 1—93—1960

Opinion filed January 20, 1995.

294

Donald L. Johnson, of Chicago, for appellants.

Egan & Trapp, of Chicago (Robert A. Egan and James M. Scavo, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:[1]

Appellants, Peter and Sharon Bilanzic (the Bilanzics), were high bidders for residential property sold by the sheriff at a mortgage foreclosure sale. The property had been foreclosed by Citicorp Savings of Illinois (Citicorp), after its borrowers, Leo and Rebecca Frontera (the Fronteras), defaulted on their mortgage. The trial court refused to

_____

[1]While Justice Zwick did not serve as a member of the original panel which heard oral arguments in this case, he has listened to the tapes of oral argument and has otherwise fully participated in the disposition of this case.

confirm the sale, finding Citicorp to have sold the property prematurely. The trial court subsequently refused to allow the Bilanzics to intervene in the case and reinstated the Fronteras' mortgage with Citicorp. The Bilanzics bring this appeal pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

There are no significant disputes as to the facts of this case. The Fronteras defaulted on their mortgage with Citicorp sometime in 1992. Citicorp brought a foreclosure action against them, serving the Fronteras on July 24, 1992. On October 15, 1992, the circuit court entered a default judgment against the Fronteras and made a finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). The Fronteras were given notice.

On October 25, 1992, the Fronteras' statutory right to reinstate the mortgage expired. 735 ILCS 5/15—1602 (West 1992).

On January 14, 1993, Citicorp set a sheriff's sale for March 10, 1993. Notice of judicial sale was sent to the Fronteras.

On February 11, 1993, the Fronteras' attorney contacted Citicorp and requested information regarding the foreclosed mortgage. On February 17, 1993, Citicorp, through counsel, forwarded to the Fronteras' attorney correspondence which included "payoff" and "reinstatement" figures. Although the statutory reinstatement period had expired, the letter indicated that Citicorp would accept either a payoff or a reinstatement payment through March 15, 1993.

On February 23, 1993, the Fronteras' statutory right to redeem the property expired. 735 ILCS 5/15—1603 (West 1992).

On March 12, 1993, the Fronteras' attorney contacted Citicorp and indicated that he had the necessary checks to reinstate the mortgage. Citicorp informed him at this time that a judicial sale had already taken place and the property had been sold two days earlier. The Bilanzics had made the highest bid at the sale. Despite being informed that the property had been sold, the Fronteras' attorney forwarded the checks to Citicorp. Citicorp refused to accept the checks and returned them to the Fronteras.

Citicorp subsequently filed a motion to approve the sheriff's report of sale, as required by statute. (735 ILCS 5/15—1508 (West 1992).) On March 16, 1993, and at a hearing on the motion, the Fronteras filed an emergency motion to prevent the confirmation. Along with their motion, the Fronteras' attorney included an affidavit which stated that an employee of Citicorp's attorney had represented to him that the judicial sale set for March 10 would be changed to March 16. The hearing was held over until April 22, 1993.

On April 22, 1993, the court held a hearing on motions filed by Citicorp and the Fronteras. In its response to the Fronteras' emer-

gency motion, Citicorp argued that it was only required to accept a reinstatement payment up until October 25, 1992, the statutory reinstatement date, and that it had never agreed to continue the judicial sale of the property which had been properly scheduled for March 10, 1993. The court determined, however, that Citicorp had agreed in the letter to give the Fronteras until at least March 15 to reinstate their loan.

Although the Bilanzics had not filed an appearance with the court or taken part in the confirmation hearing, Peter Bilanzic was in the courtroom on April 22, 1993. He asked the court if the money tendered on his behalf to the sheriff could be ordered returned to him. The court vacated the sale and ordered the Bilanzics' money be returned, noting that the sale had been done "by mistake." The court did not make findings pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

On April 28, 1993, the Bilanzics filed a motion for leave to intervene in the case. On April 30, 1993, the Fronteras filed an objection to the motion. At a hearing on the motion the court denied the Bilanzics' motion and again ordered that their money be returned.

On May 5, 1993, the Fronteras scheduled a motion to dismiss Citicorp's suit. On this day the court reinstated the Fronteras' mortgage and dismissed the suit with prejudice.

On May 28, 1993, the Bilanzics filed a notice of appeal.

Initially, both parties raise jurisdictional claims. The Fronteras argue that the Bilanzics' appeal is untimely and, because the Bilanzics were denied the right to intervene, they only have standing to challenge the court's ruling denying intervention. The Bilanzics argue that the Fronteras' right to challenge the judicial sale of the property in the circuit court expired 30 days after the court entered a final order of foreclosure on October 15, 1992. We reject both arguments.

The Fronteras argue that the Bilanzics cannot bring an appeal from the trial court's order of April 22, 1993, which vacated the judicial sale, because the Bilanzics' appeal was filed more than 30 days after the order vacating the sale was issued. An appeal brought more than 30 days after the entry of a final order is untimely under Supreme Court Rule 303(a) (134 Ill. 2d R. 303(a)). The timely filing of a notice of appeal is mandatory and jurisdictional. *Barter v. Slayback* (1992), 235 Ill. App. 3d 18, 21, 600 N.E.2d 538.

Appeals in civil cases may generally be had only from final judgments. (*Illinois Bell Telephone Co. v. Purex Corp.* (1980), 90 Ill. App. 3d 690, 413 N.E.2d 106.) A trial court's order is a final judgment when it terminates the litigation on its merits or disposes of the

rights of the parties' entire controversy, or some definite part thereof. *In re Marriage of Rossi* (1981), 100 Ill. App. 3d 669, 427 N.E.2d 294.

■ In general, orders or judgments which resolve fewer than all of the claims or dispose of the rights, liabilities and obligations of fewer than all of the parties may not be appealed until the proceedings are concluded. The trial court is granted the power under Supreme Court Rule 304(a), however, to allow an appeal following an express finding that there is no just reason for delaying either enforcement or appeal or both. (*Peter Fischer Import Motors, Inc. v. Buckley* (1984), 121 Ill. App. 3d 906, 909, 460 N.E.2d 346.) "If the trial court's order does not include this express finding, the order is subject to revision at any time before the entry of an order which adjudicates all the claims, rights and liabilities of the parties." *Peter Fischer Import Motors, Inc.*, 121 Ill. App. 3d at 909.

The trial court's order of April 22, 1993, was not an appealable order as to the Fronteras' claim. The court at this point in time had not determined the ultimate disposition of the property at issue. Thus, claims were still pending in the circuit court. Even if we were to characterize the order of April 22 as a "final" judgment, as the Fronteras urge, the trial court did not make the express findings necessary to invoke the possibility of appellate jurisdiction under Supreme Court Rule 304(a). This means that any appeal from the court's order was properly made only after the entire proceedings were dismissed. The Bilanzics' appeal is therefore timely.

The Bilanzics also raise a jurisdictional claim. They argue the circuit court was without jurisdiction to dispose of the disputed property after the Fronteras' mortgage had been foreclosed. Like the Fronteras, the Bilanzics rely upon the fact that the circuit court loses jurisdiction over a matter after passage of 30 days from the entry of a final order, unless a notice of appeal causes the circuit court to lose jurisdiction sooner. They argue that the circuit court's order reinstating the Fronteras' mortgage was beyond the court's jurisdictional power because the mortgage had been foreclosed on October 15, 1992.

■ The Bilanzics' argument, although interesting, suffers from the same infirmity as the Fronteras' jurisdictional claims discussed above. This is so because the court's order of October 15, 1992, was not appealable with regard to the *judicial sale* of the foreclosed property, which is the subject of this appeal, but merely with regard to the foreclosure proceedings. At the time this case was before the circuit court, Supreme Court Rule 304(a) provided in relevant part:

> "If multiple *** claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made

an express written finding that there is no just reason for delaying enforcement or appeal." (134 Ill. 2d R. 304(a).)

We find Citicorp's attempt to confirm the judicial sale and the Fronteras' attempt to have their mortgage reinstated to represent separate "claims" under the rule, conceptually distinct from the earlier foreclosure proceedings. The circuit court therefore retained proper jurisdiction over the parties and the remaining claims after it entered the foreclosure order on October 15, 1992.

The Fronteras also argue that because the trial court refused to grant the Bilanzics' motion to intervene in the case, the Bilanzics have no standing to bring this appeal. The Bilanzics respond by arguing that the trial court's refusal to grant them intervention was improper and that they should be able to pursue their appeal regardless of the trial court's decision. We agree with the Bilanzics on this issue.

■ Section 2—408(a)(3) of the Code of Civil Procedure provides that "anyone" shall be permitted "as of right" to intervene in an action when that person is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court. (735 ILCS 5/2—408(a)(3) (West 1992).) Intervention as of right is distinguishable from permissive intervention insofar as the trial court's exercise of discretion is concerned. (*City of Chicago v. John Hancock Mutual Life Insurance Co.* (1984), 127 Ill. App. 3d 140, 468 N.E.2d 428.) When intervention is asserted as a matter of right, as here, the trial court is limited in its discretion to determining the timeliness of the application, inadequacy of representation and the sufficiency of the applicant's position in the proceedings. (*John Hancock Mutual Life Insurance Co.*, 127 Ill. App. 3d at 144.) The Fronteras do not dispute this, but argue that the intervention application was untimely and that the petition filed by the Bilanzics failed to meet the technical requirements of section 2—408(a)(3). We disagree.

The right to intervene is a remedial right and is to be liberally construed. (*Wheeling Trust & Savings Bank v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 539, 331 N.E.2d 172.) While a person may not normally seek intervention after the rights of the original parties have been determined and a final decree entered (*In re Estate of Reilly* (1979), 68 Ill. App. 3d 906, 386 N.E.2d 462), a motion to intervene may be filed even after dismissal of the case and still be timely where necessary to protect the interests of the intervenor. (*Standard Bank & Trust Co. v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174, 377 N.E.2d 1152.) The determination of whether a petition is timely is a matter left to the sound discretion of the trial

court. (*Brandt v. John S. Tilley Ladders Co.* (1986), 145 Ill. App. 3d 304, 308, 495 N.E.2d 1269; *Standard Bank & Trust Co.*, 61 Ill. App. 3d at 177.) Private litigants are not generally permitted to rely upon other litigants to protect their interests and, when they do so, "they are properly penalized for their failure to intervene sooner." *Standard Bank & Trust Co.*, 61 Ill. App. 3d at 179.

■ In this case the earliest the Bilanzics could have learned that their successful bid would be challenged was on March 16, 1993. The Bilanzics subsequently hired an attorney who filed their motion to intervene before the proceedings had been concluded on April 28, 1993, 31 days later. While we recognize the fact that the Bilanzics did not bring their intervention motion until after the court had ruled that the sheriff's sale would not be confirmed, we find the Bilanzics' motion to be timely under the facts of this case. In *Brandt*, for example, the court allowed intervention one month after the entry of a final order. In *People ex. rel. Baylor v. Bell Mutual Casualty Co.* (1971), 2 Ill. App. 3d 17, 276 N.E.2d 113, the court allowed intervention nearly two months after the entry of a final order. Here the court denied intervention five days before it dismissed the case.

■ We also reject the Fronteras' claim that the Bilanzics' motion to intervene in the case failed to meet the technical requirements of section 2—408(e). The Fronteras have failed to set out any pertinent authorities or legal argument supporting their position on this issue. The appellate court is entitled to have issues clearly defined and to be cited pertinent authorities. (134 Ill. 2d R. 341.) The court is not a depository in which the parties may simply raise arguments without proper support or argument. *Bank of Ravenswood v. Maiorella* (1982), 104 Ill. App. 3d 1072, 1074-75, 433 N.E.2d 1044.

We therefore conclude that the trial court should have allowed the Bilanzics the right to intervene in this case.

■ In any event, it is settled law that a nonparty may bring an appeal when that person has a direct, immediate and substantial interest in the subject matter, which would be prejudiced by judgment or benefited by its reversal. (*Marcheschi v. P.I. Corp.* (1980), 84 Ill. App. 3d 873, 405 N.E.2d 1230.) While the appellate court in *In re Application of Rosewell* (1992), 236 Ill. App. 3d 473, 603 N.E.2d 753, held that the high bidder at the sheriff's sale acquires no interest in or any right to the land at issue, it cannot be disputed that the Bilanzics were adversely affected by the trial court's order or that they will have the right to the property should the sale be confirmed. This is sufficient to allow the Bilanzics to bring this appeal regardless of the decision by the trial court to deny intervention.

■ Moreover, under the facts presented, we do not believe it nec-

essary to remand the case to allow the Bilanzics the opportunity to make their arguments to the trial court. The Bilanzics have fully briefed the issues which they claim establish their right to the subject property and they do not dispute the trial court's factual conclusion that the sheriff's sale was done "by mistake." We therefore elect to resolve the issues without remandment in the interests of judicial economy and pursuant to our powers to do so under Supreme Court Rule 366 (134 Ill. 2d R. 366(a)).

The Bilanzics argue that the trial court committed reversible error in refusing to confirm the sale of the property on April 22, 1993. They also argue that the court lacked authority to reinstate the Fronteras' mortgage after the statutory period of reinstatement had expired.

With regard to the confirmation of the sheriff's sale, the Illinois Mortgage Foreclosure Law states in pertinent part:

"Upon motion and notice in accordance with court rules applicable to motions generally ***, the court shall conduct a hearing to confirm the sale. Unless the court finds that *** justice was *** not done, the court shall then enter an order confirming the sale." (735 ILCS 5/15—1508(b) (West 1992).)

As noted, at the hearing on Citicorp's motion following the sheriff's sale, the court determined the property had been offered for sale "by mistake" and refused to enter an order confirming the sale.

In Illinois it is clear that a judicial sale is not complete until it has been approved by the trial court. (*In re Application of Rosewell* (1992), 236 Ill. App. 3d 473, 603 N.E.2d 753.) Trial courts have broad discretion in approving or disapproving sales made at their direction. (*Rosewell*, 236 Ill. App. 3d at 476-77; *Berber v. Hass* (1965), 57 Ill. App. 2d 109, 207 N.E.2d 96.) The highest bid received by a sheriff at a judicial sale is merely an irrevocable offer to purchase the property and acceptance of the offer takes place when the court confirms the sale. (*Straus v. Anderson* (1937), 366 Ill. 426, 9 N.E.2d 205.) Until the court confirms the sheriff's proceedings, there is not a true sale in the legal sense. (*Levy v. Broadway-Carmen Building Corp.* (1937), 366 Ill. 279, 8 N.E.2d 671.) A court is justified in refusing to approve a judicial sale if unfairness is shown which is prejudicial to an interested party. *Evans v. Hunold* (1946), 393 Ill. 195, 65 N.E.2d 373.

The undisputed facts in the record indicate that Citicorp represented to the Fronteras that the judicial sale scheduled for March 10, 1993, would be postponed until March 16, 1993, and that the sheriff's sale took place only by mistake. While the Fronteras or Citicorp should have moved to vacate the court's order setting up the judicial sale for March 10, 1993, it would not be in the interests of

justice for the court to have confirmed the sale of the property after Citicorp affirmatively represented to the Fronteras that a sale would not take place.

The Bilanzics argue that after October 25, 1992, the trial court was without authority to reinstate the Fronteras' mortgage because the statutory reinstatement period had expired. We need not address the issue of whether Citicorp's letter waived the statutory reinstatement provisions, as we conclude the Bilanzics do not have standing to raise this claim. Standing requires injury in fact to a legally cognizable interest. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 280, 545 N.E.2d 731.) While the Bilanzics certainly have an "interest" in this litigation as the certified high bidders at the sheriff's sale, this interest evaporates upon the trial court's determination that the judicial sale will not be confirmed. What the trial court decides to do with the property after it determines the sale will not be confirmed is a matter in which the Bilanzics have no discernible legal interest. Instead, this issue is one solely between Citicorp and the Fronteras. A party must assert its own legal rights and interests, rather than basing a claim for relief upon the rights of third parties. *Helmig v. John F. Kennedy Community Consolidated School District No. 129* (1993), 241 Ill. App. 3d 653, 658, 610 N.E.2d 152.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.