**Curtis C. McEWEN, Appellant,**

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellee.**

No. 95 C 2857.
Bankruptcy No. 95B1632.

United States District Court,
N.D. Illinois,
Eastern Division.

March 27, 1996.

Ronald B. Lorsch, Mathias & Schmarak, Chicago, IL, Jeffrey B. Rose, Tishler & Wald, Ltd., Chicago, IL, for appellant Curtis C. McEwen.

Francis L. Keldermans, McBride, Baker & Coles, Chicago, IL, for appellee Federal National Mortgage Association.

### *MEMORANDUM OPINION*

GRADY, District Judge.

This is an appeal from a final order of the bankruptcy court of the Northern District of Illinois denying debtor Curtis C. McEwen's motion to vacate the bankruptcy court's previous order modifying the automatic stay to allow the Federal National Mortgage Association ("FNMA") to acquire McEwen's residence in a foreclosure sale.

### *BACKGROUND*

FNMA was the holder of the promissory note and mortgage that McEwen had executed on his principal residence at 1121 Harding, Calumet City, Illinois. When McEwen fell behind in his monthly mortgage payments, FNMA filed a complaint for foreclosure in the Circuit Court of Cook County, Illinois. The complaint was filed on May 11, 1994. On July 29, 1994, the Circuit Court entered a judgment for foreclosure in favor of FNMA in the amount of $80,948.57. After expiration of the redemption period, on January 13, 1995, a judicial sale was held in which FNMA was the successful bidder with a bid of $86,850.43.

On January 26, 1995, before the judicial sale had been confirmed by the Circuit Court of Cook County, McEwen filed in bankruptcy court a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code. In addition to the petition, McEwen filed a Chapter 13 plan and all required schedules and statements. The Chapter 13 plan provided for the curing of McEwen's default on the promissory note and mortgage that FNMA owned and held on McEwen's principal residence.

On January 30, 1995, FNMA filed a motion to modify the automatic stay in the bankruptcy court, seeking to be allowed to proceed with its mortgage foreclosure action. This motion was stricken for want of prosecution on February 7, 1995, and refiled on February 10, 1995. Counsel for McEwen was late for a March 7, 1995, hearing on the motion to modify, and in his absence the judge directed counsel for FNMA to prepare and submit a draft order granting the motion to modify. This order was entered on March 17, 1995.

On March 14, 1995, McEwen filed a motion to vacate the modification of the automatic stay. This motion was heard by the bankruptcy judge on March 28 and 29. At the hearings, counsel for McEwen argued that newly enacted § 1322(c)(1) of the Code, in conjunction with Illinois law, permits a Chapter 13 debtor to cure a default on a mortgage loan in connection with his principal residence at any time prior to state court confirmation of a judicial sale in a foreclosure action. The bankruptcy judge ruled that under Illinois law a debtor's right to cure a default in his mortgage loan is cut off at the time of a judicial sale. The motion to vacate was denied, and the order denying the motion was entered by the bankruptcy court on March 31, 1995. On April 10, 1995, McEwen filed a notice of appeal from the March 31 order.

### *DISCUSSION*

On appeal from an order of a bankruptcy court, a district court reviews factual findings of the bankruptcy court under a "clearly erroneous" standard, but reviews conclusions of law de novo. Bankr.R. 8013; *Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994); *In re Roberson,* 999 F.2d 1132, 1134 (7th Cir.1993). The appeal before the court presents no issues of fact. Since a Chapter 13 plan may cure a default with respect to a lien on a debtor's principal residence "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law," 11 U.S.C. § 1322(c)(1), the only issue to be resolved is what constitutes a foreclosure sale that has been conducted in accordance with Illinois law.

The Illinois Mortgage Foreclosure Law ("IMFL") states that "upon entry of a judgment of foreclosure, the real estate which is the subject of the judgment shall be sold at a judicial sale...." 735 ILCS 5/15–1507(a). A judicial sale may be conducted by any judge or sheriff, 735 ILCS 5/15–1507(b), is public, 735 ILCS 5/15–1507(c), and typically takes the form of an auction, 735 ILCS 5/15–1506(f), where the highest bidder becomes

the purchaser. Once the purchaser has been determined, the person conducting the judicial sale must report the sale to the court that ordered the foreclosure. 735 ILCS 5/15–1508(a). The court must then conduct a hearing to confirm the sale. 735 ILCS 5/15–1508(b). "Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15–1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done, the court shall then enter an order confirming the sale." 735 ILCS 5/15–1508(b). McEwen contends that a judicial sale under the IMFL is insufficient to constitute a foreclosure sale in accordance with nonbankruptcy law, as required by 11 U.S.C. § 1322(c)(1), because the IMFL requires court confirmation of a judicial sale before title to and possession of the property can pass to the purchaser. FNMA contends, and the bankruptcy court below held, that once a judicial sale of a residence has been conducted under the IMFL, and a purchaser has been identified, the residence has been sold at a foreclosure sale for purposes of 11 U.S.C. § 1322(c)(1). The bankruptcy court held that a state court's confirmation of a judicial sale is simply a ministerial act.

Since 11 U.S.C. § 1322(c)(1) only became effective on October 22, 1994, in reaching its conclusion the bankruptcy court relied on bankruptcy cases that had applied 11 U.S.C. § 1322(b)(5), an older and less specific Chapter 13 right-to-cure provision. *In re Beaty*, 116 B.R. 112 (Bankr.N.D.Ill.1990), for example, held that the debtors had no right to cure their mortgage default under § 1322(b)(5) because they, like McEwen, had filed their Chapter 13 plan after the judicial sale of their residence and before the sale had been confirmed by the court. The *Beaty* court reasoned that "the sale substantially changes the rights of both the debtor and the mortgagee.... The parties' rights no longer arise from the mortgage; new rights have arisen." *Id.* at 115.

■ It makes sense for courts to focus upon the rights of the parties with respect to the mortgage in the context of § 1322(b)(5) cases because that provision bases the right to cure upon the terms of the claim. The debtor has the right to cure "any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). But the new right to cure a default with respect to a debtor's principal residence, under § 1322(c)(1), is not limited by the terms of the mortgage; it is limited by applicable nonbankruptcy law. Therefore, rather than focussing upon the rights of the parties relative to the mortgage at various points in the foreclosure process, and upon the decisions of other bankruptcy courts with respect to those rights, the bankruptcy court should have focussed upon what it means to conduct a foreclosure sale in accordance with Illinois law.

■ It is quite apparent from the cases cited by appellant that under Illinois law it has been well-established for some time that a foreclosure sale has not been conducted until the judicial sale has been confirmed by the court.

In Illinois it is clear that a judicial sale is not complete until it has been approved by the trial court. (*In re Rosewell* (1992), 236 Ill.App.3d 473, 177 Ill.Dec. 683, 603 N.E.2d 753.) Trial courts have broad discretion in approving or disapproving sales made at their direction. (*Rosewell*, 236 Ill.App.3d at 476–77, 177 Ill.Dec. 683, 603 N.E.2d 753; *Berber v. Hass* (1965), 57 Ill.App.2d 109, 207 N.E.2d 96.) The highest bid received by a sheriff at a judicial sale is merely an irrevocable offer to purchase the property and acceptance of the offer takes place when the court confirms the sale. (*Straus v. Anderson* (1937), 366 Ill. 426, 9 N.E.2d 205.) Until the court confirms the sheriff's proceedings, there is not a true sale in the legal sense. (*Levy v. Broadway–Carmen Building Corp.* (1937), 366 Ill. 279, 8 N.E.2d 671.)

*Citicorp Savings of Illinois v. First Chicago Trust Co.*, 269 Ill.App.3d 293, 206 Ill.Dec. 786, 793, 645 N.E.2d 1038, 1045 (Ill.App.Ct. 1995).

The Illinois cases also show that the bankruptcy court was incorrect in its conclusion that confirmation of the judicial sale is simply a ministerial act to be routinely performed

by the state court. Even if a court's discretion to approve or disapprove judicial sales were not broad, as the cases state, it would be bad policy to characterize the court's confirmation decision as a ministerial act. A court's rulings should not be considered to be mere formalities in some cases—those cases in which the court confirms a sale—but not in other cases—those cases in which the court does not confirm.

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is reversed and the case is remanded for further proceedings consistent with this opinion.