217 B.R. 558 (1998)
In re William R. CRAWFORD, Debtor.
William CRAWFORD, Appellant,
v.
FIRST NATIONWIDE MORTGAGE CORP., Appellee.
Nos. 98 C 211, 97 B 22063.
United States District Court, N.D. Illinois, Eastern Division.
February 4, 1998.
Jeffrey F. Kohan, Zalutsky & Pinski, Ltd., Chicago, IL, for Debtor.
Craig Phelps, Chicago, IL, for trustee.

MEMORANDUM OPINION AND ORDER
SHADUR, Senior District Judge.
This is an appeal from a decision by Bankruptcy Judge Ronald Barliant that hinges on precisely when under Illinois law a debtor's "residence is sold as at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law"the language of 11 U.S.C. § 1322(c)(1) ("Section 1322(c)(1)"), which was introduced into the Bankruptcy Code by the Bankruptcy Reform *559 Act of 1994. Like his colleague Bankruptcy Judge Eugene Wedoff (see In re Christian, 199 B.R. 382 (Bankr.N.D.Ill.1996)), Judge Barliant held in his January 21, 1998 Memorandum Opinion ("Mem. Op.") that the quoted statutory language refers to the date on which the debtor's residence is knocked down to a bidder at the mortgage foreclosure sale.[1]
Two of this Court's colleagues (Judge John Grady in McEwen v. Federal Nat'l Mtg. Ass'n, 194 B.R. 594 (N.D.Ill.1996) and Judge Elaine Bucklo, reversing Judge Wedoff in Christian v. Citibank, F.S.B., 214 B.R. 352 (N.D.Ill.1997)) have rejected the Bankruptcy Judges' reading, instead holding that under Illinois law Section 1322(c)(1) denotes the later post-auction date when the foreclosure court actually confirms the sale to the high bidder. That distinction often proves critical, for the function of Section 1322(c)(1) is to fix the watershed date after which the debtor cannot cure existing mortgage defaults. But despite the cogent policy arguments that have been advanced by the two extraordinarily able Bankruptcy Judges in support of their position, this Court is constrained by Illinois case law to reach the same conclusion as Judges Grady and Bucklo.
It is entirely true, as Mem. Op. 4-5 says, that the enactment of Section 1322(c)(1) was intended as a legislative overturning of the outlier position, announced some years earlier by the Court of Appeals for the Third Circuit (In re Roach, 824 F.2d 1370 (3d Cir. 1987)), "that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale" (H.R.Rep. No. 103-835, at 52 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3361),[2] To reject that Roach position, the new legislation codified the law that, as n. 2 explains, had been pronounced in every other Circuit (id.):
This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law.
In enacting that new provision, however, Congress did not expressly define what the House Report described as the "completion of a foreclosure sale under applicable nonbankruptcy law"  or, to quote the statutory language again, Congress did not specify just when "such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." And that absence of an express definition has resulted in the divergent judicial decisions referred to earlier in this opinion.
This Court has often repeated the truism that Illinois state law is what the Illinois courts say it is, not what the federal courts (at any level of the judicial hierarchy) may choose to say about it. In that regard the Illinois Supreme Court has had occasion to repeat within the past two weeks the proposition to which this Court has often pointed in the context of Erie v. Tompkins diversity jurisprudence (In re A.A., a Minor (Department of Children & Family Servs. v. People), 181 Ill.2d 32, 228 Ill.Dec. 905, 690 N.E.2d 980 (1998)):
It is the absolute duty of the circuit court to follow the decisions of the appellate court.
And in that same context this Court has consistently ruled that its role is identical to that of its state trial court counterparts, so that this Court too must adhere to the dictates of the Illinois Appellate Courts.
That being the case, this Court is obligated to conform to this unambiguous 1995 pronouncement *560 in Citicorp Sav. of Ill. v. First Chicago Trust Co. of Ill., 269 Ill.App.3d 293, 300, 206 Ill.Dec. 786, 793, 645 N.E.2d 1038, 1045 (1st Dist.1995):
In Illinois it is clear that a judicial sale is not complete until it has been approved by the trial court. (In re Rosewell (1992), 236 Ill.App.3d 473, 177 Ill.Dec. 683, 603 N.E.2d 753.) Trial courts have broad discretion in approving or disapproving sales made at their direction. (Rosewell, 236 Ill.App.3d at 476-77, 177 Ill.Dec. 683, 603 N.E.2d 753; Berber v. Hass (1965), 57 Ill.App.2d 109, 207 N.E.2d 96.) The highest bid received by a sheriff at a judicial sale is merely an irrevocable offer to purchase the property and acceptance of the offer takes place when the court confirms the sale. (Straus v. Anderson (1937), 366 Ill. 426, 9 N.E.2d 205.) Until the court confirms the sheriff's proceedings, there is not a true sale in the legal sense. (Levy v. Broadway-Carmen Building Corp. (1937), 366 Ill. 279, 8 N.E.2d 671.)
If this action were to be resolved solely in terms of public policy, seeking only to minimize (if not to eliminate) the legitimate and serious concerns voiced by Judges Barliant and Wedoff as to the potential impact of a mortgagor's ability to cure defaults beyond the date of the auction presided over by a special commissioner, the carefully articulated Barliant-Wedoff presentations would seem to have the better of it. But for that view to prevail, either Congress must recast Section 1322(c)(1) to mandate the use of the auction date alone or the Illinois courts must change their tune as to what constitutes the "foreclosure sale." Absent either such change, this Court is simply duty bound to follow the clear teaching of Citicorp.
Just two points should be added before closing. They may be set out in brief compass.
First, it involves an impermissible strain on the statutory language to say (as Mem. Op. 7 does) that the use of the word "conducted" in Section 1322(c)(1)  rather than "final" or "approved" or "completed" or "court approved"  argues against adherence to the Citicorp position. That contention ignores the fact that "conducted" is not an isolated word in the statute  rather the statute speaks of the sale as being "conducted in accordance with nonbankruptcy law." And Citicorp plainly says that a sale is not "conducted in accordance with [Illinois] law" unless and until it reaches and survives the judicial confirmation date ("Until the court confirms the sheriff's proceedings, there is not a true sale in the legal sense").
Second, it simply will not do to toss brickbats at Citicorp as assertedly being unsupported by the authorities that the Illinois Appellate Court cites (Mem.Op.11-12). Nor will it do to attempt to cast a cloud on that 1995 decision by saying that it does not follow "[a]pposite authority" in the form of Illinois Appellate cases decided seven and eight years earlier (id. at 12). Simply put, that type of approach mistakes the role of federal courts in applying state law, either under Erie v. Tompkins diversity jurisprudence or in the comparable situation here.[3] We in the federal court system are just not free to say that we believe that the Illinois courts have gotten things wrong in their analyses and pronouncements of their own law, no matter how convinced we are of the rightness of our own views (or, indeed, not even if an objective outside analyst might agree with our views rather than those of the Illinois courts).

Conclusion
It should be underscored that this Court has the greatest respect for the always-thoughtful Judges Barliant and Wedoff  and in this instance, for their understandable desire to avoid the unfortunate consequences that may flow from the Citicorp-directed *561 reading of Illinois mortgage foreclosure law.[4] But what may be viewed as sound policy cannot be permitted to override the Illinois jurisprudence to which both the Bankruptcy Court and this Court are obligated to adhere. This Court therefore reverses the Bankruptcy Court's decision and remands this action to the Bankruptcy Court for such further proceedings as may be required consistent with this opinion.
NOTES
[1] Judge Barliant had reached the same conclusion as to the critical date under the law that preceded the enactment of Section 1322(c)(1)  see In re Beaty, 116 B.R. 112 (Bankr.N.D.Ill. 1990).
[2] Every other Court of Appeals that had considered the question had held that the debtor's right to cure persisted until at least the date of the auction  and perhaps later, depending on the relevant state law. So the incentive that fueled the legislative change was a perceived need to eliminate the lone maverick Third Circuit position. But as the statutory reference to "applicable nonbankruptcy law" unquestionably reflects, Congress was not at the same time creating a uniform nationwide federal rule, choosing instead to leave substantive mortgage foreclosure law where it had traditionally been: in the hands of the states.
[3] It is scarcely a secret that this Court is no fan of the slavish adherence to state law that is mandated by Erie and its progeny. In addition to its treatment of that subject in published opinions, see the address that this Court delivered as the 1986 Dooley Distinguished Lecture in Law, reprinted as Are Federal Courts Necessary?, 18 Loy.U.Chi.L.J. 1 (1986). But even though the judicially decreed overruling of Swift v. Tyson by Erie v. Tompkins may be historically suspect for the reasons suggested in that address, no comparable criticism may be made of an express congressional directive to federal courts to follow state law, as is mandated by Section 1322(c)(1).
[4] It may also be added that some of what is said in the Mem. Op., in pointing out possible flaws in the analyses of lien concepts and other aspects of Illinois mortgage law that are set out in the Judge Grady and Judge Bucklo opinions, appears to carry some force. But any such arguable shortcomings simply show once again that Illinois law is defined by the Illinois courts and not by what the federal courts may make of it  none of those claimed flaws derogates from the conclusive impact of Citicorp on the controlling issue here.