LUCIUS SWILLEY *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF COOK *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—02—2748

Opinion filed May 10, 2004.

Rufus Cook, of Cook & Revak, Ltd., of Chicago, for appellants.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Sara K. Hornstra, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Randolph T. Kemmer, and Michael C. Prinzi, Assistant State's Attorneys, of counsel), for appellees County of Cook and Maria Pappas.

JUSTICE McNULTY delivered the opinion of the court:
The plaintiffs, a group of taxpayers, contend that Cook County

violated the Property Tax Code (Code) (35 ILCS 200/1—1 *et seq.* (West 2000)) by transferring to the City of Chicago, for no cash, properties the county acquired through no-cash bids in scavenger sales. The trial court held that the plaintiffs lacked standing to raise the claims stated in the complaint. Plaintiffs appeal. We affirm because we find that plaintiffs have not stated facts showing any violation of the Code.

In their four-count amended complaint, filed in April 2001, plaintiffs Lucius Swilley and 12 other named individuals allege that they are "taxpayers and members of African-American and other minority groups residing in the city of Chicago." Geneva Bell and seven other named individual plaintiffs allege that their property "has been taken or is [in] jeopardy of being taken pursuant to the unlawful no-cash bid program." The individual plaintiffs and two not-for-profit corporations, also plaintiffs, allege that the city asked the county to file no-cash bids for more than 5,000 properties offered for sale at the tax scavenger sales held in 1997 and 1999. The county acquired the properties and transferred them to the city for no monetary consideration. Plaintiffs allege that the transfer violated the Code. According to the complaint, the properties acquired by no-cash bids "are predominantly located in minority communities, and *** the delinquent taxpayers, occupants or persons interested therein are predominantly black, Hispanic and other disadvantaged minorities." The complaint further alleges that "the preponderance of contractors who provide services to and obtain compensation from the City for implementation of the no-cash bid program are white."

In count I plaintiffs seek to enjoin the county from the allegedly illegal practice of acquiring properties through no-cash bids and transferring them to the city for no cash. In count II Bell and other plaintiffs who own property request just compensation from the defendants for their properties if the city acquires them through the illegal program involving no-cash bids. All plaintiffs allege in count III that the illegal program for no-cash bids has disparate impact upon racial minorities, thereby violating regulations of the Department of Housing and Urban Development. Finally, plaintiffs allege in count IV that the illegal program confers benefits on white contractors, and the benefits prove that the city and the county intend racial discrimination.

Defendants moved to dismiss counts III and IV as substantially insufficient and because plaintiffs lacked standing. Plaintiffs initially moved to dismiss counts III and IV voluntarily, but withdrew that motion when defendants opposed it. Plaintiffs explained in their response to the motion to dismiss:

> "Counts 3 and 4, the race discrimination counts, rely on the same factual and legal allegations as counts 1 and 2, that defendants' ac-

tions violate the Tax Code, and allege further that defendants' scheme is racially discriminatory.

> Since the racial discrimination counts (3 and 4) derive from the alleged illegality of defendants' actions as the complaint is presently drawn, plaintiffs' ability to proceed with the discrimination counts depends on whether they have standing to proceed with the counts (1 and 2) charging statutory violations. Recognizing that fact, plaintiffs chose to dismiss voluntarily counts 3 and 4, the race discrimination counts, with the intention of re-filing them should there be a favorable resolution, at the trial or appellate level, of the threshold standing and statutory violation issues raised by counts 1 and 2."

Defendants also moved to dismiss the entire complaint because plaintiffs lacked standing. The court dismissed counts I, III and IV with prejudice, but gave plaintiffs leave to replead count II. Plaintiffs elected to stand on the complaint. The court then dismissed the complaint with prejudice.

Because the court dismissed the complaint on the pleadings, we review the judgment *de novo*. *Malanowski v. Jabamoni*, 293 Ill. App. 3d 720, 725-26 (1997). We must determine whether the allegations of the complaint, interpreted in the light most favorable to plaintiffs, suffice to establish a cause of action. *Ward v. Mid-American Energy Co.*, 313 Ill. App. 3d 258, 260 (2000). Even if the trial court reasoned erroneously, this court may affirm the judgment on any basis supported by the record. *Rome v. Commonwealth Edison Co.*, 81 Ill. App. 3d 776, 779 (1980). For purposes of this appeal, we assume that plaintiffs have standing to raise the claim that the county violated the Code.

Plaintiffs base their complaint on the central claim that the county violates sections 21—90 and 21—260 of the Code (35 ILCS 200/21—90, 21—260 (West 2000)) by making no-cash bids for properties at the city's behest, and by transferring the properties so acquired to the city for no monetary consideration. Section 21—90 provides:

> "When any property is delinquent, or is forfeited for each of 2 or more years, and is offered for sale under any of the provisions of this Code, the County Board of the County in which the property is located, in its discretion, may bid, or, in the case of forfeited property, may apply to purchase it, in the name of the County as trustee for all taxing districts having an interest in the property's taxes or special assessments for the nonpayment of which the property is sold. \*\*\* The County shall apply on the bid or purchase the unpaid taxes and special assessments due upon the property. No cash need be paid. The County shall take all steps necessary to acquire title to the property and may manage and operate the property. \*\*\*

The County may sell or assign the property so acquired, or the certificate of purchase to it, to any party, including taxing districts. The proceeds of that sale or assignment, less all costs of the county incurred in the acquisition and sale or assignment of the property, shall be distributed to the taxing districts in proportion to their respective interests therein." 35 ILCS 200/21—90 (West 2000).

Plaintiffs argue that the transfers to the city leave no money for distribution to other taxing districts, like the Chicago Board of Education and the Cook County Forest Preserve District, and those taxing districts needed to impose higher taxes on plaintiffs to compensate for the revenue lost. In their opening brief plaintiffs argue that under the statute the county, as trustee for the taxing districts, must obtain cash consideration sufficient to cover costs and allow for some distribution to the taxing districts.

The Code expressly gives the county the option of either selling or assigning the property, and the city, as a taxing district, is expressly made a possible assignee. If we construe the statute to require a sale, the provision for assignment appears to be superfluous. We must construe statutes, where possible, to make every term meaningful. *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 105 (2003). The statute does not mandate any sale. *Weitzman v. Cook County*, 133 Ill. App. 3d 1013, 1017 (1985). The statute requires only apportionment of amounts received, if the county receives any amount for the properties acquired by no-cash bids. *Weitzman*, 133 Ill. App. 3d at 1017. Section 21—90 expressly authorizes the no-cash bids and the assignments to the city alleged in the complaint. The complaint does not state a cause of action for violation of section 21—90.

Section 21—260 of the Code provides that when a property owner fails to pay property taxes for two or more years (see 35 ILCS 200/ 21—145 (West 2000)), the County Collector shall sell the property at a scavenger sale to the highest bidder, even if the bid is less than the full amount of taxes, penalties and costs due on the property. Subsection g says:

"Any taxing district may bid at a scavenger sale. The county board of the county in which properties offered for sale under this Section are located may bid as trustee for all taxing districts having an interest in the taxes for the nonpayment of which the parcels are offered. The County shall apply on the bid the unpaid taxes due upon the property and no cash need be paid. The County or other taxing district acquiring a tax sale certificate shall take all steps necessary to acquire title to the property and may manage and operate the property so acquired.

*** The County may sell the properties so acquired, or the certificate of purchase thereto, and the proceeds of the sale shall be

distributed to the taxing districts in proportion to their respective interests therein." 35 ILCS 200/21—260(g) (West 2000).

Plaintiffs, in their reply brief, raise the novel argument that this section restricts the options available to the county. While section 21—90 expressly grants the county the power to assign properties to taxing districts, section 21—260 does not mention assignment. The county may manage and operate the properties, or the county may sell the properties, under the express terms of section 21—260. Plaintiffs ask this court to infer from the failure to mention assignment that the legislature intended to forbid assignment for no compensation of properties the county acquires for no-cash bids at scavenger sales.

Plaintiffs' construction of the statute conflicts with the explicit language of section 21—90. That section establishes that it applies to any "sale under any of the provisions of this Code." 35 ILCS 200/21—90 (West 2000). The scavenger sale provisions in section 21—260 remain in the Code. Under section 21—90 the county has the power to make no-cash bids at any tax sale, including scavenger tax sales, and "The County may sell or assign the property so acquired *** to any party, including taxing districts." 35 ILCS 200/21—90 (West 2000). Nothing in section 21—260 removes the power expressly granted in section 21—90 or in any other way conflicts with the provision allowing assignment of properties to taxing districts, including the city.

Moreover, plaintiffs' interpretation of section 21—260 disserves the purposes of that section. The tax scavenger sale provisions of section 21—260 apply only to properties "at risk of forfeiture to the State as a result of nonpayment of property taxes." *People v. Meyers*, 158 Ill. 2d 46, 60 (1994). Usually taxing bodies recover unpaid taxes through the annual tax sale conducted under procedures set forth in sections 21—190 through 21—255 of the Code. 35 ILCS 200/21—190 through 21—255 (West 2000); *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 486 (1979). But many properties fail to attract bidders at the annual sale, especially when the outstanding tax bills for the properties exceed their market prices. *Chicago Title*, 75 Ill. 2d at 486-87; *People ex rel. Larson v. Rosewell*, 88 Ill. App. 3d 272, 274 (1980). For these properties our legislature allowed more drastic measures to return the properties to the active tax rolls. *In re Application of Rosewell*, 97 Ill. 2d 434, 442-43 (1983) (*Levin*). The collector may sell these properties for less than the amount of unpaid taxes and extinguish the tax liens to facilitate restoration of the properties. *Levin*, 97 Ill. 2d at 443.

The legislature also accommodated the possibility that an assignment of property for no cash might benefit the public more than a sale. *In re Application of Rosewell*, 236 Ill. App. 3d 473 (1992) (*Koktapeh*), involved such a situation. In that case a neighborhood

redevelopment group proposed to build a cultural complex on a property delinquent in taxes. Although the city approved the planned development, the county treasurer sold the property to a private individual at a scavenger tax sale. The treasurer and the purchaser moved for confirmation of the sale. The city and the neighborhood redevelopment group intervened and opposed the sale. The trial court ordered the treasurer to refund the purchase price to the purchaser so the city could acquire the property through the no-cash bid procedure, for assignment to the redevelopment group. This court affirmed the trial court's decision, noting that the "plans for redevelopment of the property at issue promise not only a higher tax base and thus increased revenue for the city, but also 700 new jobs." *Koktapeh*, 236 Ill. App. 3d at 478.

The legislature granted the county the power to acquire property through no-cash bids especially "to clean up a hopeless and difficult tax delinquency situation and place taxable property on the tax rolls again." *Dupuy v. Morse*, 337 Ill. App. 1, 6 (1949). The statute expressly allows the county the flexibility to decide, in its discretion, whether to sell the property, or to assign the property to a private party (like the redevelopment group in *Koktapeh*, 236 Ill. App. 3d 473), or to assign the property to a taxing district, or to retain and manage the property. Under plaintiffs' construction of the statute, the properties most desperately in need of drastic measures, the properties available at scavenger sales, would not benefit from the flexibility the legislature granted the county. The statutory language and purposes do not permit the construction plaintiffs ask us to impose on it. The power of assignment granted in section 21—90 applies to all properties the county acquires under the Code, especially those not sold through the usual tax sales, which are the properties available at scavenger tax sales. The actions described in the complaint do not violate section 21—260 of the Code.

We agree with plaintiffs that counts III and IV of the complaint depend on their allegation that the county violated the Code by making no-cash bids and subsequently transferring properties to the city for no cash. Because we find that plaintiffs failed to state a claim for violation of the Code in counts I and II, we also affirm dismissal of counts III and IV.

Section 21—90 of the Code applies to all sales under the Code, including scavenger tax sales. That section permits the county to acquire property at tax sales for no-cash bids, and to assign the properties, for no cash consideration, to taxing districts, including the city. Because the no-cash bid program described in the complaint does not

violate the Code, the complaint fails to state a cause of action. Accordingly, we affirm the trial court's decision to dismiss the complaint.

Affirmed.

GORDON and McBRIDE, JJ., concur.